IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IRA BROWN, | § | |
| | § | No. 178, 2014 |
| Defendant-Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware, |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | Cr. ID 1110018439 |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: January 14, 2015
Decided: January 23, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **RIDGELY**, **VALIHURA**, and **VAUGHN**, Justices (constituting the Court *en banc*).

Upon appeal from the Superior Court. **AFFIRMED**.

Michael C. Heyden, Esquire (*argued*), Wilmington, Delaware, for Appellant.

Andrew J. Vella, Esquire (*argued*), Department of Justice, Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice:

# I. INTRODUCTION

The defendant-appellant, Ira Brown, filed this appeal from a Superior Court order denying his first motion for postconviction relief under Superior Court Criminal Rule 61 ("Rule 61"). Brown raises two issues on appeal. First, he contends that he is entitled to a new trial based on newly discovered evidence of misconduct at the Office of the Chief Medical Examiner ("OCME"). Although Brown did not raise this claim in his Rule 61 motion (because the problems at the OCME did not come to light until almost a year after Brown filed his Rule 61 motion), we nonetheless consider this issue on appeal in the interests of justice.[1] Brown's second issue on appeal challenges the Superior Court's 2012 denial of both his oral motion and his written motion to withdraw his guilty plea. Brown could have raised this argument in his Rule 61 motion (or in a timely direct appeal) but did not. This argument thus is waived and procedurally barred, and we do not consider it here.

We find that Brown's first claim has no merit. Under *United States v. Ruiz*, a court may accept a guilty plea, with its accompanying waiver of various constitutional rights (including the right to a fair trial), even when the defendant does not have full knowledge of the relevant circumstances.[2] A defendant has no

---

[1] *See* Del. Supr. Ct. R. 8 (2015) ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

[2] *United States v. Ruiz*, 536 U.S. 622, 623 (2002) (holding that the *"*Constitution, in respect to a defendant's awareness of relevant circumstances*,* does not require complete knowledge, but

constitutional right to receive material impeachment evidence before deciding to plead guilty, and Brown's knowing, intelligent, and voluntary guilty plea waived any right he had to test the strength of the State's evidence against him at trial, including the chain of custody of the drug evidence that he claims he was entitled to receive.[3]  When, as here, a defendant like Brown admits that he committed the crime of which he is accused in a valid plea colloquy, *Ruiz* prevents him from reopening his case to make claims that do not address his actual guilt.

That precedent has sensible application here.  The situation at the OCME is, to be sure, disturbing and regrettable. But to date, the investigation has yielded no indication that the OCME scandal involved the planting of false evidence to wrongly convict criminal defendants.  Rather, it has mostly consisted of instances where employees stole evidence that they knew to be illegal narcotics for resale and personal use.  That is, that misconduct occurred because the drugs tested by the OCME were in fact illegal drugs desired by users.  When a defendant like Brown has admitted in his plea colloquy that he possessed heroin and intended to sell it, the OCME investigation provides no logical or just basis to upset his conviction. We therefore affirm the Superior Court's denial of postconviction relief.

---

permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor").
[3] *Id.* ("[T]he Constitution does not require the [State] to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.").

## II. BACKGROUND

### A. *Brown's Guilty Plea And Motion To Withdraw*

Brown was arrested in October 2011 on multiple criminal charges after Wilmington police obtained a search warrant for his home and discovered, among other things, more than 900 bags of heroin in his bedroom. His trial was scheduled for April 24, 2012. On that date, the Superior Court judge engaged in an extensive colloquy with Brown about his decision to waive his right to a jury trial, his frustration with his counsel's refusal to file two pretrial motions (which his counsel deemed frivolous), and—ultimately—his decision to plead guilty to a single charge of Drug Dealing.[4]

The transcript of the plea hearing reflects that the Superior Court judge questioned Brown carefully about the factual basis for his plea. Brown freely acknowledged that he was guilty of dealing in heroin as charged in the indictment.[5] He stated "on October 26, I possessed heroin and today in Court I'm pleading guilty to drug dealing," and answered affirmatively when the court asked him if he knew he had heroin, if he intended to deal drugs, and if he knew that doing so was against the law.[6]

The colloquy therefore reflects Brown's knowing, intelligent, and voluntary waiver of his rights. Brown understood the plea and its consequences, including

---

[4] DEL. CODE ANN. tit. 16, § 4752(1) (Supp. 2014).
[5] App. to State's Ans. Br. at B8.
[6] *Id.*

the potential sentence, and Brown stated that nobody had promised him anything or threatened him or forced him to take the plea.[7] Brown answered affirmatively when he was asked whether he had enough time to talk with his lawyer about the charges, the facts, the possible defenses to the charges, and the consequences of taking the guilty plea.[8] He agreed to be the sentenced the next day by a different Superior Court judge in conjunction with his sentencing on other unrelated drug convictions following a jury trial.[9]

At the end of the colloquy, the judge asked Brown whether he was satisfied with his defense attorney's representation. Brown expressed concerns initially about his attorney[10] but then twice answered affirmatively when asked if he was satisfied with his counsel's representation.[11] The Superior Court accepted the plea, finding that there was a factual basis for the plea and that Brown had entered the plea knowingly, intelligently, and voluntarily.[12]

The next day, at his April 25, 2012 sentencing hearing before the other Superior Court judge, Brown made an oral, *pro se* motion to withdraw his plea, which the Superior Court denied without prejudice. In denying Brown's request, the Superior Court stated, "you had a chance yesterday to finish the trial that you

---

[7] *Id..*
[8] *Id.* at B8-9.
[9] *Id.* at B8.
[10] "I just feel personally that me and my counsel didn't see, a lot of times on different occasions, eye to eye and I wasn't treated fairly." B9.
[11] *Id.*
[12] *Id.*

5

started. You stopped that trial when you told the Court that you wanted to plead guilty, and but for that, you would have gone to trial, you would have faced possible conviction on everything and the sentence that would have been imposed as a result of that."[13] The court ruled that Brown could present a formal motion to withdraw to the judge who took his plea on the previous day.

The Superior Court sentenced Brown on his Drug Dealing conviction to 25 years at Level V incarceration, to be suspended after serving 12 years in prison for decreasing levels of supervision.[14] On April 27, 2012, defense counsel filed a motion to withdraw Brown's guilty plea, asserting Brown's contention that he "felt pressured and threatened because my counsel said that I would be convicted at trial" and "[m]y counsel refused to file motions on my behalf."[15] Counsel simultaneously filed a motion to withdraw as counsel on Brown's behalf, which the Superior Court granted.

The Superior Court denied Brown's motion to withdraw his guilty plea in an order dated May 17, 2012, noting that that a motion filed after sentencing "constitutes a collateral attack on the conviction" and is "subject to the procedural requirements of Rule 61."[16] The Superior Court determined that Brown's claims of a coerced plea were contradicted by the extensive plea colloquy and Brown's

---

[13] App. to Brown's Open. Br. at A7.
[14] *Id*. at A10.
[15] *Id*. at A61.
[16] *Id. at* A62.

own statements that he had not been threatened or forced to take the plea, that he understood the consequences of the plea, and that he was satisfied with his attorney's professional representation.[17]

Brown did not file a direct appeal of his conviction to this Court. Nor did Brown appeal the Superior Court's denial of his motion to withdraw his guilty plea. Instead, on April 24, 2013, Brown retained private counsel, who filed a Rule 61 motion on his behalf. The only issue raised in that motion was a claim that Brown's trial counsel was ineffective for failing to file a pretrial suppression motion challenging the validity of the search warrant in Brown's case. The Superior Court denied Brown's motion, and this appeal followed. New counsel was appointed to represent Brown on appeal. New counsel presented the two arguments pending before the Court for decision; neither argument was raised below.

### B. *Criminal Investigation Of The OCME*

In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.[18] The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees

---

[17] *Id*. at A66.

[18] The facts are set forth in a 36-page preliminary report issued jointly by the DSP and DOJ on June 19, 2014 entitled *Investigation of Missing Drug Evidence: Preliminary Findings*, a copy of which is included in the Appendix to Brown's Opening Brief at A23-58.

7

in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.[19]

There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions.[20] That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

On June 5, 2014, almost two months after Brown filed his appeal, the DOJ sent a letter to Brown's counsel stating that one or more of the individuals in the chain of custody for his case was indicted on criminal charges resulting from the OCME investigation. The letter further stated that the State has no evidence that

---

[19] *See State v. Irwin*, 2014 WL 6734821, *1 (Del. Super. Nov. 17, 2014).

[20] *Compare United States v. Smith*, __ F. Supp.3d __, 2014 WL 7179472 (D.Mass. Dec. 15, 2014) (noting that a laboratory chemist in Massachusetts had pleaded guilty to multiple charges of tampering with evidence by adding controlled substances to the samples she tested in order to achieve a positive test result).

the bags seized from Brown did not contain heroin or had in any way been tampered with or altered.[21]

### III. ANALYSIS

#### A. *Newly Discovered Evidence*

Brown first argues that he is entitled to a new trial because of the newly discovered evidence of misconduct at the OCME. Brown asserts that, because the problems at the OCME were ongoing while his case was pending in the Superior Court, the State was required to disclose that information as *Brady*[22] material.

The State responds in its answering brief that Brown failed to articulate how his case has been affected by the OCME investigation because he did not allege that any discrepancies existed as to the drug evidence tested in his case.[23] The State further asserts that Brown's knowing and voluntary guilty plea waived any complaints about the chain of custody of the drug evidence in his case. Moreover,

---

[21] A11.

[22] *Brady v. Maryland*, 373 U.S. 83 (1963) (establishing that a defendant has a right to receive exculpatory material from prosecutors at trial).

[23] For the first time in his reply brief, Brown asserted that a discrepancy existed between the police report, which indicated that officers seized 917 bags of heroin, and the OCME's report, which reflected a slightly larger number of bags. Reply Br. at 3. Brown implies that the discrepancy in the total count suggests mishandling by the OCME. In response to this contention, the State provided supplemental disclosure to Brown and this Court explaining that the discrepancy was the result of two factors. *See* Letter from Andrew J. Vella, Deputy Attorney General, to Michael C. Heyden (Jan. 7, 2015); Letter from Andrew J. Vella, Deputy Attorney General, to Michael C. Heyden (Jan. 12, 2015). First, bags of drugs that were used by the police in the "controlled buy" resulting in Brown's arrest were not included in the total number of bags reflected in the officer's report but *were* included in the total number of bags sent to the OCME. Second, the police officer's report contained counting errors. Not only does Brown fail to provide any basis to infer that he did not possess *over 900 bags of heroin*, *Ruiz* makes this factual dispute, which is ill-suited for resolution by an appellate court on a cold record, irrelevant, for reasons we explain.

the State argues that the OCME investigation is impeachment material only and that the State would not have been required to disclose that material under *Brady* before Brown entered his plea, even assuming that the State should have known about the OCME's problems in 2011 or 2012.

We agree with the State that evidence of the OCME investigation did not affect the validity of Brown's guilty plea and that Brown is not entitled to a new trial. In *United States v. Ruiz*, the United States Supreme Court held that the "Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."[24] Therefore, the "Constitution does not require the [State] to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant,"[25] because a defendant who pleads guilty decides to forgo "not only a fair trial, but also other accompanying constitutional guarantees"[26] and "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*."[27]

---

[24] *Id.*

[25] 536 U.S. 622, 633 (2002).

[26] *Id.* at 629.

[27] *Id.*

In this case, Brown admitted that he was guilty of possessing and dealing heroin.[28] The plea colloquy reflects that Brown knowingly, voluntarily, and intelligently pled guilty. By pleading guilty, Brown gave up his right to trial and his right to learn of any impeachment evidence. Brown is bound by the statements he made to the Superior Court before his plea was accepted,[29] and *Ruiz* prevents him from reopening his case to make claims that do not address his guilt, and involve impeachment evidence that would only be relevant at trial.[30]

---

[28] He stated "on October 26, I possessed heroin and today in Court I'm pleading guilty to drug dealing." App. to State's Ans. Br. at B8.

[29] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

[30] In holding that impeachment evidence need not be disclosed to a defendant before entering into a binding plea agreement, the Supreme Court noted in *Ruiz* that, "[i]t is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." 536 U.S. at 630. There is a circuit split as to whether *Ruiz* creates a distinction between impeachment evidence and exculpatory evidence, or evidence that "may well be determinative of guilt or innocence." *Giglio v. U.S.*, 405 U.S. 150 (1972). *Compare McCann v. Magialardi*, 337 F.3d 782 (7th Cir. 2003) (holding that *Ruiz* "strongly suggests" that the government is required to disclose material exculpatory information before a guilty plea); *United States v. Ohiri*, 133 F. App'x 555 (10th Cir. 2005)(holding that *Ruiz* suggests that exculpatory evidence must be disclosed before a guilty plea); *with U.S. v. Conroy*, 567 F.3d 174 (5th Cir. 2009) (finding that *Ruiz* did not create a distinction between impeachment and exculpatory evidence); *United States v. Moussaoui*, 591 F.3d 263 (4th Cir. 2010) (suggesting that *Ruiz* precludes all post-plea *Brady* challenges); *Friedman v. Rehal*, 618 F.3d 142 (2d Cir. 2010) (suggesting that *Ruiz* precludes all post-plea *Brady* challenges, including those involving exculpatory evidence).

As in *Ruiz*, the impeachment evidence that came to light after Brown pled guilty and was sentenced did not go to his actual innocence or affect the voluntariness of his plea. In citing to this circuit split, we underscore the reality that our decision is limited to the case before it and fact patterns like it, and that if materially different situations emerge, they must be dealt with on their precise facts. For example, where a defendant entered a reluctant, but fully informed, no contest or guilty plea to lesser charges with no prison sentence to avoid the risk of a lengthy prison sentence on more serious charges, while proclaiming his factual innocence and expressing incredulity that the substance he claimed was legal had tested to be illegal narcotics, a later revelation that evidence planting had occurred in the relevant police department and that the defendant had been one of the victims of that misconduct, that situation could raise distinct

In *United States v. Wilkins*, the District Court of Massachusetts encountered a factually similar situation and held that *Ruiz* barred an assertion of a *Brady* claim.[31] In that case, two defendants pled guilty to possessing crack cocaine with intent to distribute. By the time the second defendant was sentenced, it had come to light that a chemist who worked at the lab and tested the drugs had breached laboratory protocols, rigged results, and falsely certified that she had tested drugs. When the defendants moved to vacate their pleas, the drugs were re-tested and no discrepancies were found.

In evaluating the motions to vacate, the district court applied *Ruiz* and held that the defendants were not entitled to relief: "Here, neither [defendant] makes a claim of actual innocence. Thus, any impeaching material regarding [the chemist's] mishandling of the evidence in theirs or other cases would only be relevant at trial to the extent that it might be used to challenge the chain of custody of the drugs at issue, or possibly to impeach the efforts of the substitute chemist to repair the damage done by [the chemist]. Neither of these purposes, as *Ruiz* makes clear, has any relevance to the validity of defendants' guilty pleas."[32]

As in *Wilkins*, *Ruiz*'s application to this case is clear. Brown freely admitted that he possessed heroin and intended to sell it. Nothing regarding the regrettable

---

considerations from those in this case, where the defendant freely admitted that he possessed illegal drugs.

[31] 943 F. Supp. 2d 248 (D. Mass. 2013), *aff'd sub nom. Wilkins v. United States*, 2014 WL 2462554 (1st Cir. June. 3, 2014).

[32] *Id.* at 255.

problems at the OCME therefore caused any injustice to Brown, who confessed that he was guilty of the crimes to which he pled guilty.

## B. *Motion To Withdraw Guilty Plea*

Unlike his first claim, Brown's second argument on appeal does not ask the Court to consider any "new" evidence, but instead challenges the proceedings leading to his judgment of conviction. He contends that the Superior Court erred when it denied his motion to withdraw his guilty plea. Specifically, Brown argues that his written motion to withdraw his plea should have been considered under Superior Court Rule 32, rather than Rule 61, because Brown made an oral motion to withdraw his plea before he was sentenced.[33]

We do not reach the merits of Brown's second argument for two reasons. First, he failed to raise this claim in the Rule 61 motion he filed in the Superior Court, and consideration of this claim for the first time on appeal is not warranted in the interest of justice under Supreme Court Rule 8.[34] Second, even if Brown had raised this argument in his Rule 61 motion, the claim is procedurally barred by Rule 61(i)(3), which states that any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is thereafter barred unless the

---

[33] Rule 32 states that "[i]f a motion for withdrawal of a plea of guilty . . . is made before imposition or suspension of sentence or disposition without entry of a judgment of conviction, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only by motion under Rule 61."

[34] Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

13

defendant can establish cause and prejudice. Brown's contention that the Superior Court erred in denying his motion to withdraw his guilty plea is one that could, and should, have been raised in a timely direct appeal.[35] Brown has made no attempt to establish cause or prejudice from his failure to raise this claim in a timely fashion. Accordingly, he is now barred by Rule 61(i)(3), and we find no colorable claim of a miscarriage of justice sufficient to overcome this procedural hurdle.[36]

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is AFFIRMED.

---

[35] *Kalil v. State*, 2014 WL 2568029, *3 (Del. June 5, 2014); *Smith v. State*, 2008 WL 2955585 (Del. Aug. 4, 2008); *Benge v. State*, 945 A.2d 1099, 1101 (Del. 2008).
[36] Del. Super. Ct. Crim. R. 61(i)(5).