IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DESIREE A. ARICIDIACONO, et al., | § | |
| | § | No. 718, 2014 |
| Defendants Below-Appellants, | § | |
| | § | |
| v. | § | |
| | § | Court Below:  Superior Court |
| STATE OF DELAWARE, | § | of the State of Delaware, |
| | § | in and for Sussex County |
| Plaintiff Below-Appellee. | § | |

Submitted:  October 7, 2015
Decided:  October 12, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, and **VAUGHN**, Justices.

Upon appeal from the Superior Court.  **AFFIRMED**.

J. Brendan O'Neill, Esquire, Nicole M. Walker, Esquire (*Argued*), Elliot Margules, Esquire, Office of Public Defender, Wilmington, Delaware, for Appellants.

Elizabeth R. McFarlan, Esquire (*Argued*), Department of Justice, Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice:

These consolidated cases all involve an identical question, which is whether a defendant who pled guilty after a colloquy and admitted to crimes involving the possession of illegal narcotics should have her conviction vacated because she was unaware of serious problems at the Office of the Chief Medical Examiner (the "OCME")[1] The Superior Court answered that question no, and held that the defendants were bound by their pleas.[2] A 2014 investigation by the Delaware State Police and the Department of Justice revealed that some OCME employees had stolen drug evidence stored at the OCME due in large part to flawed oversight and security. To date, those problems, although including substantial evidence of sloppiness and allegations of "drylabbing,"[3] do not in any way involve evidence-planting.[4] To the contrary, much of the uncovered misconduct seemed to be inspired by the reality that the evidence seized from defendants in fact involved illegal narcotics, and the temptation this provided to certain employees to steal some of that

---

[1] Although the defendants have not cited to every plea colloquy, none points to any evidence suggesting that there is any reason to believe that any colloquy was less than full and complete. Those colloquies in the record were of that nature and given the assiduousness of defense counsel, any deficiency in a particular colloquy would presumably been brought to the Superior Court's and our attention.

[2] Although the name of this case on appeal is different, the Superior Court's decision in these consolidated actions was *State v. Absher*, 2014 WL 7010788, at *3 (Del. Super. Dec. 3, 2014).

[3] "Drylabbing" occurs when a chemist declares the composition of a substance without having performed all the necessary scientific testing to support the declared result.

[4] *See Anzara Brown v. State*, 117 A.3d 568, 581 (Del. 2015); *Ira Brown v. State*, 108 A.3d 1201, 1204–05 (Del. 2015) ("There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff 'planted' evidence to wrongly obtain convictions."); *State v. Ringgold*, 2015 WL 3580742, at *3 (Del. Super. June 2, 2015) ("There was no evidence to suggest that OCME employees 'planted' evidence to wrongly obtain convictions. Nor was there evidence that the substances actually tested by the chemist were false.").

1

evidence for their personal use and for resale.[5]  Those problems have now been discussed

in several judicial opinions, and in publicly available investigative reports.[6]

In prior decisions, we made clear that if a defendant knowingly pled guilty to a

drug crime, he could not escape his plea by arguing that had he known that the OCME

had problems, he would not have admitted to his criminal misconduct in possessing

illegal narcotics.[7]  As we pointed out, the poor evidence-handling practices at the OCME,

however regrettable, were not a license for every defendant to obtain a get-out-of-jail-free

card.[8]  Rather, as has happened on several occasions since the OCME problems emerged,

relief should be granted to a defendant only when the problems at the OCME could be

said to have contributed to an unfair conviction.[9]  In our prior decisions, we found that

when defendants freely admitted their guilt by admitting that they possessed illegal

narcotics, their lack of knowledge that the OCME's evidence-handling practices were

seriously flawed and that some OCME employees had engaged in malfeasance, did not

---

[5] *See Ira Brown v. State*, 108 A.3d at 1205 ("[T]he employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.").

[6] *See, e.g.*, *id.* at 1204–05; *Anzara Brown v. State*, 117 A.3d at 578–81; *Brewer v. State*, 2015 WL 4606541, at *1–3 (Del. July 30, 2015); *Patrick L. Brown v. State*, 2015 WL 3372271, at *1–2 (Del. May 22, 2015); Office of the Attorney General, *Investigation of Missing Drug Evidence: Preliminary Findings* (June 19, 2014), http://www.attorneygeneral.delaware.gov/documents/OCME_Controlled_Substances_Unit_inve stigation_preliminary_findings.pdf.

[7] *See Ira Brown v. State*, 108 A.3d at 1205–06; *Patrick L. Brown v. State*, 2015 WL 3372271, at *2.

[8] *Anzara Brown v. State*, 117 A.3d at 581.

[9] *See, e.g.*, *State v. Irwin*, 2014 WL 6734821, at *13 (Del. Super. Nov. 17, 2014) ("Since the evidence as to each of the defendants here has established discrepancies in the amounts allegedly seized by the police and that tested by the independent lab, the defendants will be given an opportunity to explore this difference including cross-examining witnesses about the OCME investigation or presenting such evidence in their cases if they find appropriate.").

invalidate their pleas.[10]   Because we reach the same conclusion today, we affirm the Superior Court's decision.

These forty-five defendants did not request in their motions for postconviction relief that the Superior Court vacate their guilty pleas.  Instead, they asked the Superior Court to vacate their convictions, although the Public Defender now acts as if their motions to vacate their sentences sought that relief.  The defendants all press the simple point that if they had known about problems at the OCME, it could have affected the plea bargaining process.[11]   Based on this premise, they also make a due process argument that their pleas were involuntary under *Brady v. United States*[12] because they were unaware of the issues at the OCME when they pled guilty.[13]   Under *Brady*, a guilty plea is considered involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."[14]   The defendants claim that the Superior Court somehow slighted this argument in its decision below. But, the Superior Court did not ignore this slight variation on the defendants' repetition of arguments made in prior cases. The Superior Court just rejected it.  And so do we.  As the Superior Court found, the

---

[10] *See Anzara Brown v. State*, 117 A.3d at 581; *Brewer*, 2015 WL 4606541, at *2–3; *Patrick L. Brown v. State*, 2015 WL 3372271, at *2; *Carrero v. State*, 2015 WL 3367940, at *2 (Del. May 21, 2015); *McMillan v. State*, 2015 WL 3444673, at *2 (Del. May 27, 2015); *Irwin*, 2014 WL 6734821, at *13.

[11] Opening Br. at 31–32.

[12] 397 U.S. 742 (1970).

[13] Opening Br. at 19, 32.

[14] *Brady*, 397 U.S. at 755 (internal citation omitted) (internal quotation marks omitted).

3

defendants here submitted no evidence to suggest a natural inference that any misconduct at the OCME (or lack of knowledge of that conduct) coerced or otherwise induced the defendants to falsely plead guilty.

Tellingly, the defendants do not in any way argue that the State knew about the problems at the OCME when they pled guilty and failed to disclose those problems; that the State engaged in any coercive or improper behavior to procure their pleas; or that any of the defendants in fact gave a false admission. The last point bears reiteration: not one of the defendants argues that she was in fact not in possession of illegal narcotics and that her plea was false.[15] Rather, the suggestion is solely that the defendants would not have pled or would have gotten better deals if they had known of the problems at the OCME.[16] Because the evidence-handling problems at the OCME were serious, the defendants argue that all of their pleas should be vacated so that a recurrence of the issues at the OCME is made more unlikely. Otherwise, the defendants contend that there will be no fair reckoning by the State with the improper practices and no attempt to rectify them.

The State disagrees with this contention, and argues that the Superior Court acted properly in upholding the sentences of all these defendants. Although the State concedes that the problems at the OCME were serious, it stresses that no injustice was done to these defendants who all admitted that they possessed illegal narcotics and who to this day do not disclaim the truth of those statements. In support of its argument that no unfairness has occurred, the State notes that as to thirty-five of the defendants, they

---

[15] Opening Br. at 2 (summarizing the defendants' sole argument regarding the failure to disclose OCME misconduct).

[16] *Id.* at 33–34.

4

entered their pleas before the OCME had even conducted testing on the evidence seized from them.[17] As to other of the defendants, the State notes the substantial benefits the defendants obtained by the plea process, with most defendants obtaining a plea to a greatly reduced set of charges and to sentences far below that which they could have received had they gone to trial.[18]

In resolving this disagreement, we adhere to our prior decisions in *Ira Brown v. State*[19] and *Anzara Brown v. State*,[20] as well as our recent order in *Brewer v. State*,[21] where we also addressed an argument similar to the one now advanced.[22] Without in any way minimizing the importance of integrity in the processing of evidence that will be used in criminal trials, we do not share the view of these defendants that they can simply point to the publicly reported problems at the OCME and thereby avoid their voluntary acknowledgement that they committed crimes involving the illegal possession of

---

[17] Answering Br. at 5.

[18] *Id.* at 5–10.

[19] 108 A.3d 1201 (Del. 2015).

[20] 117 A.3d 568 (Del. 2015).

[21] 2015 WL 4606541 (Del. July 30, 2015).

[22] In *Brewer*, we rejected an argument indistinguishable from the one now made, stating:

> Brewer's reliance on decisions based upon language in *Brady v. United States* does not change this result. In *Brady,* the United States Supreme Court held that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." The Court clarified that "[o]f course, the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." As long as the defendant can "with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty," the Court determined there is no constitutional cause for concern. Brewer has failed to allege any improper coercion that undermined his ability to rationally weigh the advantages or disadvantages of trial.

*Id.* at *3 (internal citations omitted).

narcotics and other illegal substances.[23]  The passionate argument made on their behalf does not include any contention that any of the defendants were not in fact telling the truth when they freely admitted their factual guilt.[24]

Moreover, although the passion of defense counsel is admirable, their contention that our Superior Court has somehow undermined our system of justice by its careful and expeditious handling of the many cases that have arisen since the OCME problems surfaced comes with little grace.  Likewise, its contention that the State itself has not taken these problems seriously seems strained.  The reality is that since the problems arose, the State itself has (1) conducted an intensive investigation that forms the basis for the defendants' allegations; (2) compromised many cases with other defendants where the evidence-handling problems at the OCME bore directly and for case-specific reasons on a prosecution or the validity of a sentence;[25] and (3) terminated employees at the

---

[23] *See Ira Brown v. State*, 108 A.3d at 1206 (citing *United States v. Ruiz*, 536 U.S. 622, 630 (2002)) ("*Ruiz* prevents [the defendant] from reopening his case to make claims that do not address his guilt, and involve impeachment evidence that would only be relevant at trial.").

[24] In *Ferrara v. United States*, the First Circuit indicated that it would not set aside a plea as involuntary under *Brady v. United States* unless a defendant shows both "some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea" and "that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice."  456 F.3d 278, 290 (1st Cir. 2006).  We do not need to embrace that gloss on *Brady v. United States* to decide this case, but note that even if there was conduct at the OCME that could be said to be egregious, we have determined, in accordance with our prior reasoning in *Ira Brown v. State* and *Anzara Brown v. State*, that this conduct did not materially affect any of the pleas.  Thirty-five of the forty-five cases before us involved pleas made before the defendant even received a report from the OCME.  And in the other cases, the defendant has made no rational argument that he made a false plea because of some improper governmental conduct; rather in each case, the defendant knowingly admitted to his unlawful possession of illegal drugs.

[25] *E.g.*, *Irwin*, 2014 WL 6734821, at *13 (explaining that "an audit of the evidence from more than 9000 cases was undertaken" after the problems at the OCME were discovered and observing that "cases have been dismissed or were allowed to plea to reduced charges").

OCME and prosecuted others, including the Chief Medical Examiner himself. Further, the General Assembly and the Governor have taken action to restructure the State's governance of its crime lab and to create a new crime lab.[26] Although these efforts may not be deemed sufficient by counsel for the defendants, they deserve acknowledgement because they refute the defendants' contention that but for their release from voluntary pleas for illegal conduct they still do not deny committing, there will be no response to the problems that have been uncovered at the OCME.

Put simply, the defendants are unable to identify any equitable reason why they should not be held to their pleas. We have no doubt that the defendants and their counsel wish they had known of the problems at the OCME when the defendants voluntarily admitted their guilt and used their acceptance of responsibility to get charges dropped and secure sentences far below the statutory maximum. It may be the case that knowing about the OCME problems would have given the defendants more bargaining leverage. But that possibility is not a basis for concluding that the defendants were unfairly convicted after a voluntary plea. Each of these defendants had every opportunity to claim that she was in fact not guilty, to contend that she did not possess illegal drugs, and to go to trial. To this day, not one advances the contention that she was in fact innocent.

Given these realities, there is no just basis to vacate their pleas or otherwise upset their sentences. We therefore affirm the well-reasoned judgment of the Superior Court in its order of December 3, 2014.

---

[26] *See* S. 241, 147th Gen. Assemb., Reg. Sess. (Del. 2014) (establishing the Division of Forensic Science, abolishing the OCME, and vesting all powers previously given to the OCME with the Division of Forensic Science).