IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

         v.

EDWARD L. RUST,

         Defendant.

I.D. No. 1110001725
Kent County

## ORDER

Before the Court are Defendant Edward Rust's Amended Motion for Postconviction Relief, the State's Memorandum in Opposition, and Mr. Rust's Reply Brief. This is Mr. Rust's first motion for postconviction relief under Superior Court Criminal Rule 61. Mr. Rust premises his motion upon the State's nondisclosure of potential impeachment material: specifically, evidence of misconduct at the Office of the Chief Medical Examiner (OCME).

The motion fails to assert a colorable claim because Mr. Rust waived his right to receive impeachment material under *Brady* when he entered a valid plea. The motion is thus time-barred under Superior Court Criminal Rule 61 and his motion will be *dismissed*.

## FACTS

On October 3, 2011, Mr. Rust was arrested by police on suspicion that he was involved with growing and selling marijuana. According to police reports, Mr. Rust confessed that he drove around the state cutting and gathering marijuana, storing it on his property, and providing it to others to sell. Police obtained a search warrant and discovered marijuana in several sheds. They also received consent to search other areas around the property and discovered still more marijuana.

From shed number 1, officers seized 7 grams of loose marijuana and 107 grams

of marijuana in a bag. From shed number 2, police seized a glass jar containing a plastic bag of 29 grams of marijuana, an ibuprofen bottle of 36 grams of marijuana, other bottles with trace amounts of marijuana, and a morphine bottle with 11 grams of marijuana seeds. From shed number 3, police recovered a red cup with 47 grams of marijuana and seeds and 3 grams of loose marijuana. Elsewhere on the property, police seized four one gallon Ziplock bags of marijuana containing 233 grams, 239 grams, 232 grams, and 234 grams, one paper bag with 579 grams of marijuana, a white plastic shopping bag with 234 grams of marijuana, a white plastic bag containing 133 grams of marijuana, a yellow plastic bag containing 184 grams of marijuana, a large black plastic bag containing 1.2 kg of marijuana, and another large plastic bag containing 545 grams of marijuana.

The drug evidence was tested by forensic chemists within the OCME. The items that were tested returned positive for the suspected substances. There were minor discrepancies in the weights of the substances as collected and as tested.

At the final case review on July 25, 2012, Mr. Rust accepted the State's plea offer. On the record, the State summarized the agreement, stating that Mr. Rust was:

> ple[ading] guilty to [Count 1], drug dealing. . . .
>
> . . . .
>
> The State will enter a nolle prosequi on the remaining charges in this indictment. We are asking for immediate sentencing: 25 years at Level V suspended after ten years at Supervision Level V followed by six months at Level IV home confinement and one year at Level III probation.
>
> Again, the State is requesting an enhancing penalty because he would otherwise be eligible for sentencing as an habitual offender.

The other conditions are: Forfeit all the evidence seized; undergo a substance abuse evaluation and treatment; the statutory DNA. And it is a joint request, your Honor, that the defendant be permitted to report on August 8, and that is because of his medical condition; trying to get all of his medicine ready, essentially, for him to bring with him.[1]

Following the State's summary of the agreement, defense counsel related to the Superior Court judge:

The Court has before it paperwork that I filled out with Mr. Rust today. The procedural history in this matter reflects not only the fact that I was involved in another case for an extended period of time but also extensive discussions with Mr. Rust with his medical providers and discussions with [the prosecutor] which have ultimately resulted in this plea today as opposed to going to trial.

I filled out with him the truth-in-sentencing guilty plea form. The Court will note question number four. There was an error. That was initialed indicating that there should be a corrected answer which was put in.

I reviewed with him the trial rights he would be waiving by entering the plea, the sentence guidelines. He also understands there is the revocation of the license for a six-month period. And in all other respects, I believe the Court will determine that this is a knowing, voluntary, and intelligent plea.[2]

After the defendant was placed under oath, the judge engaged in a plea colloquy with him:

THE COURT: Mr. Rust, did you hear what your attorney, Mr.

---

[1] App. to Pet'r's Am. Mot. for Postconviction Relief A32, A35–A37.

[2] *Id.* at A36–A37.

3

Schmid, just said to me about your offer to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Was what he said correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, since this charge is an amended charge, I'm going to read it to you again, Mr. Rust. It reads: Count 1, drug dealing, a felony, in violation of Title 16 §4752.

. . . .

THE COURT: Subsection 2 of the Delaware code of 1974, as amended. Edward L. Rust, on or about the 23rd day of October 2012, in the county of Kent, state of Delaware, did knowingly manufacture, deliver, or possess with intent to manufacture or deliver 1500 grams or more of marijuana, a Tier III controlled substance, as described and classified in 16 Del. C. §4701(26) and also §4714(d)(9), and there is an aggravating factor.

Do you understand that charge?

THE DEFENDANT: I don't understand the aggravating part of it.

MR. SCHMID: May I, your Honor?

THE COURT: Sure.

(Confers with client.)

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Your attorney has just explained to you what that means?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And with that explanation, do you understand the charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. And do you admit your guilt to the charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the maximum penalty which the [sic] allows for this offense is up to 25 years in jail plus such

4

fine or other condition as the Court may impose?

    THE DEFENDANT: Yes, your Honor.

    THE COURT: Do you understand there's a two-year minimum?

    THE DEFENDANT: Yes, your Honor.

. . . .

    THE COURT: Now, with regard to your written guilty plea form, have you given correct answers to all the questions on the form?

    THE DEFENDANT: Yes, your Honor.

    THE COURT: Do you understand each of the Constitutional rights which are listed on the form?

    THE DEFENDANT: Yes, your Honor.

    THE COURT: And do you understand that by pleading guilty, you give up those Constitutional rights?

    THE DEFENDANT: Yes, your Honor.

. . . .

    THE COURT: Is it your desire to enter into this plea knowingly and intelligently because you are guilty of the offense?

    THE DEFENDANT: Yes, your Honor.[3]

The judge accepted Mr. Rust's plea.[4] At his later sentencing, on August 8, 2012, Mr. Rust stated: "I would just like to say that the part played in this was just to help somebody from committing suicide . . . . Her husband begged me to help his other partner change the pot so she can make her house payment . . . . I wasn't making a dime out of it."[5]

The judge ultimately sentenced him to twenty-five years at Level V suspended

---

[3] *Id.* at A38–A41.

[4] *Id.* at A41.

[5] *Id.* at A47–A48.

after ten years followed by six months at Level IV home confinement followed by one year at Level III, hold at Level V for Level IV home confinement.[6]

Two years later, the evidence-handling issues at OCME were revealed to the public for the first time. Those issues are explained at length in other decisions of this Court and our Supreme Court, and need not be discussed in detail here. The Petitioner points to evidence that might suggest additional improper practices. Those allegations would be regrettable if they are indeed true, but they are irrelevant to the disposition of this motion. It suffices to note in passing that the additional evidence suggests a possibility that OCME tests have resulted in a false positive on at least one occasion and that wrongdoing may have extended farther back than 2010.

## DISCUSSION

Mr. Rust's motion will be dismissed because it fails to present a colorable claim of a miscarriage of justice and is thus time-barred under the version of Rule 61 that applied at the time of his motion.

### I. Mr. Rust's Claim Is Procedurally Barred Except to the Extent
### It Presents a Colorable Constitutional Claim.

Although this is Mr. Rust's first motion for postconviction relief, his motion would generally be time-barred by operation of Superior Court Criminal Rule 61(i).

"A motion for postconviction relief may not be filed more than one year after

---

[6] *Id.* at A49.

the judgment of conviction is final . . . ."[7] The time bar is inapplicable in the case of "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[8]

Mr. Rust's motion for postconviction relief was filed nearly two years after his plea and sentencing: beyond the one-year period provided by Rule 61(i). The question that remains is whether Mr. Rust has asserted a colorable claim under *Brady v. Maryland*,[9] in which case the time bar would be inapplicable to him.

## II. A Claim That *Brady* Is Applicable to Impeachment Material in the Plea Agreement Setting Does Not Constitute a Colorable Claim.

It is a question that, unhappily for Mr. Rust, has been litigated and answered in the negative again[10] and again[11] before not just this Court[12] but also our Supreme Court. At its core, it involves an assertion that Mr. Rust's plea was involuntary under *Brady* because he was unaware of the issues at the OCME when he pleaded guilty. This Court is bound to reject that assertion under the clear precedent established by our Supreme Court.

---

[7] Super. Ct. Crim. R. 61(i)(1) (2014). Because Mr. Rust's motion was filed before the June 4, 2014 updates to Rule 61, the prior version of the Rule controls.

[8] *Id.* R. 61(i)(5).

[9] 373 U.S. 83 (1963).

[10] *Aricidiacono v. State*, 125 A.3d 677 (Del. 2015).

[11] *Ira Brown v. State.*, 108 A.3d 1201 (Del. 2015).

[12] *E.g., State v. Allen*, No. 1207010588, 2016 WL 520716 (Del. Super. Feb. 3, 2016).

To be valid, a guilty plea "does not require complete knowledge of the relevant circumstances," and such a plea and its accompanying waiver of rights may be accepted "despite various forms of misapprehension under which a defendant might labor."[13] When a defendant admits that he was guilty of committing the crime and makes his plea knowingly, voluntarily, and intelligently, he gives up "his right to trial and his right to learn of any impeachment evidence."[14]

Stated differently, under *Brady*, "the Constitution does not require the [State] to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."[15]

It follows that when "a defendant knowingly [pleaded] guilty to a drug crime," he cannot vacate his plea by arguing that if he knew there were problems at the OCME, "he would not have admitted to his criminal misconduct in possessing illegal narcotics."[16] Poor evidence handling, while a serious concern, is not a get-out-of-jail-free card for every defendant.[17] Defendants are bound by their statements during a plea colloquy and cannot reopen their cases "to make claims that do not address [their guilt], and involve impeachment evidence that would only be relevant at trial."[18]

Like other recent Rule 61 movants, Mr. Rust identifies only impeachment

---

[13] *Ira Brown*, 108 A.3d at 1206 (quoting *United States v. Ruiz*, 536 U.S. 622, 630 (2002)).
[14] *Id.*
[15] *Ruiz*, 536 U.S. at 633.
[16] *Aricidiacono*, 125 A.3d at 678.
[17] *Id.*
[18] *Ira Brown*, 108 A.3d at 1206.

8

evidence that would have affected his decision to accept the plea.[19]  While the argument headings and several passages contain passing  reference to *exculpatory* evidence, the argument itself connects that language with no examples of exculpatory evidence related to the OCME scandal.[20]

And thus, like other recent Rule 61 movants, Mr. Rust' plea of guilty, made knowingly, intelligently, and voluntarily, prevents him from attacking his plea or conviction on *Brady* grounds when his sole allegation is that the State did not provide impeachment evidence to him.  He waived the right to receive such evidence by his plea.  As *Ruiz* and our Supreme Court have made clear, *Brady* is not implicated by Mr. Rust's acceptance of a plea agreement.

There can be no question on this record that Mr. Rust's plea was made knowingly, intelligently, and voluntarily. When asked by the Superior Court judge whether he was pleading guilty because he was in fact guilty, he responded in the affirmative.   And at his sentencing, Mr. Rust expressly identified the substance he dealt as "pot."   Nothing in the circumstances of the plea colloquy or any of the evidence brought forward by Mr. Rust leads the Court to doubt the sentencing judge's conclusion that Mr. Rust's plea was valid.

Mr. Rust would have us reverse our Supreme Court's interpretation of *Ruiz*, arguing that its holding was "erroneous[ ]" and "incorrect."[21] This Court can discern

---

[19] Def.'s Am. Mot. for Postconviction Relief 17.

[20] *Id.* at 17–24.

[21] *Id.* at 43.

no reason to depart from our Supreme Court's binding precedent. Nor is it disposed to search high and low for such a reason.

Under the doctrine of stare decisis, "[o]nce a point of law has been settled by decision of [our Supreme] Court, 'it forms a precedent which is not afterwards to be departed from or lightly overruled or set aside . . . and [it] should be followed except for urgent reasons and upon clear manifestation of error.'"[22] The doctrine "operates to fix a specific legal result to facts in a pending case based on judicial precedent directed to identical or similar facts in a previous case in the same court or one higher in the judicial hierarchy."[23] The Court thus declines Mr. Rust's invitation to depart from the interpretation that has been settled upon by our Supreme Court.

His attempt to distinguish his case from all the contrary cases decided by our Supreme Court likewise falls far short of the mark. The essential point of distinction Mr. Rust propounds is that "none of [the Court's decisions] address whether the State violated *Brady* when a defendant accepted a plea on the eve of trial with the potential jury waiting to be selected."[24] But it appears that Mr. Rust has not assiduously examined the record in those cases or, for that matter, his own. For example, *Ira Brown v. State*, which Mr. Rust references in the very same paragraph, involved a

---

[22] *Account v. Hilton Hotels Corp.*, 780 A.2d 245, 248 (Del. 2001) (quoting *Oscar George, Inc. v. Potts*, 115 A.2d 479, 481 (Del. 1955)).

[23] *Id.* (citing *Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965, 969–70 (3d Cir. 1979), *abrogated on other grounds by St. Margaret Mem'l Hosp. v. NLRB*, 991 F.2d 1146 (3d Cir. 1993)).

[24] Def.'s Am. Mot. for Postconviction Relief 40, 43.

defendant who pleaded guilty on the day he was scheduled for trial.[25] And perhaps more crucially, Mr. Rust himself pleaded guilty on the day of his final case review, July 25, 2012, with a trial scheduled for five days later, July 30.[26] He did not plead guilty on the eve of trial, and certainly not "minutes before the trial would have began [sic]."[27]

Because Mr. Rust waived his right to receive impeachment material when he knowingly, voluntarily, and intelligently pleaded guilty, he has not asserted a colorable claim that there was a miscarriage of justice under *Brady v. Maryland.* Thus, his motion for postconviction relief is time-barred.

---

[25] Appellant's Opening Br. App. A-3, *Ira Brown v. State*, 108 A.3d 1201 (Del. 2015) (No. 178, 2014).

[26] Dkt. Nos. 24–26.

[27] Def.'s Am. Mot. for Postconviction Relief 40. The Court is concerned by this mistaken factual assertion, repeated across several pages of the amended motion. *Compare id.* at 5 ("On July 25, 2012, the final case review on the eve of trial, Mr. Rust entered a plea agreement") *and id.* at 39 ("Mr. Rust accepted a plea on the eve of trial"), 40 ("Mr. Rust's guilty plea occurred minutes before the trial would have began [sic]") *and id.* at 43 ("Mr. Rust [sic] acceptance of the plea on the eve of trial") *and id.* at 44 ("When the State did not disclose any *Brady* information on the eve of trial, Mr. Rust only then decided to accept the plea.") *and id.* at 45 ("Mr. Rust's plea, on the eve of trial") *and id.* at 46 ("Mr. Rust accepted a plea on the eve of trial") *with* Dkt No. 22 (setting final case review for July 25, 2012 and trial for July 30, 2012) *and* Dkt. No. 26 (entering plea on date of final case review, not trial) *and Eve, Merriam-Webster.com,* https://www.merriam-webster.com/dictionary/eve (last visited Mar. 3, 2017) ("the evening or the day before a special day" or "the period immediately preceding"). The Court assumes the misstatements of fact are attributable to inadvertence on counsel's part, and views them as such. Nonetheless, counsel are reminded of their obligations under Superior Court Civil Rule 11 as incorporated to criminal motion practice by Superior Court Criminal Rule 57(d). By representing a written motion to the Court, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support." Super. Ct. Civ. R. 11(b).

*State v. Edward L. Rust*
I.D. No. 1110001725
March 8, 2017

## CONCLUSION

For the foregoing reasons, Mr. Rust's motion for postconviction relief is **DISMISSED**.

IT IS SO ORDERED.

_____
Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:   Prothonotary
xc:   Susan G. Schmidhauser, Esquire
      Christopher S. Koyste, Esquire

12