# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                    )
                                      )
            Plaintiff,                )
                                      )
                                      )
    v.                                )    Cr. ID. No.  1507023490
                                      )
                                      )
                                      )
ROBERT L. URQUHART,                   )
                                      )
            Defendant.                )

Date Decided: March 15, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF

Phillip M. Casale, Esquire, Deputy Attorney General, Delaware Department of Justice, 820 N. French St. 7th Floor, Wilmington, DE, 19801. Attorney for the State.

Natalie S. Woloshin, Esquire, 3200 Concord Pike, PO Box 7329, Wilmington, DE 19803. Trial Counsel.

Robert Urquhart, *pro se*.

**MANNING**, Commissioner:

This 15th day of March, 2018, upon consideration of defendant Robert L. Urquhart's Motion for Postconviction Relief ("Motion"), I find and recommend the following:

## Facts and Procedural History

On July 30, 2015, officers with the Wilmington Police Department, FBI, and Safe Streets Task Force, executed search warrants for Urquhart, his address at 104 Rita Road and a vehicle associated with him in connection with an illegal drug investigation. Officers located 87.8 grams of crack cocaine and 869 bags of heroin weighing 13 grams in a detached shed in Urquhart's backyard. Officers also located 38 bags of crack cocaine weighing over 29 grams and 2,393 bags of heroin weighing 35 grams in a vehicle parked in the driveway of 104 Rita Road. The vehicle had been rented by Urquhart and located inside the vehicle were documents in Urquhart's name as well as his wallet. In the house, police located $9,613.00 in cash. According to the police reports, Urquhart made post-*Miranda* statements admitting to possession/ownership of the drugs in the shed, but not the car. Additionally, when shown the bags of drugs found in the shed by police, Urquhart admitted that the bags contained heroin and crack cocaine, stating that he had just "re-upped" and that he "moves a lot of drugs." [1] In total, 3,262 bags of heroin were

---

[1] All facts cited herein are taken from the police reports attached to pleadings filed by the State and Trial Counsel.

located which field-tested positive, and 41 bags of crack cocaine were located which also field-tested positive.

Urquhart was subsequently indicted on September 28, 2015, for Aggravated Possession of cocaine (more than 25 grams), Drug Dealing cocaine (more than 20 grams), Aggravated Possession of heroin (more than 5 grams), Drug Dealing heroin (more than 4 grams), Drug Dealing Marijuana and Possession of Drug Paraphernalia. Per SENTAC guidelines, Urquhart faced 2 – 25 years on each of the counts of Aggravated Possession and Drug Dealing heroin or cocaine, for a total of eight years minimum/mandatory Level 5 time if convicted as indicted.[2]

Trial Counsel (hereinafter "Counsel") was retained to represent Urquhart in August 2015. According to the detailed Affidavit filed by Counsel in response to Urquhart's Motion, she requested discovery from the State and meet with Urquhart on at least four occasions prior to the entry of his guilty plea. She also sent him a number of letters memorializing their conversations and answering his questions.[3]

After negotiations between the State and Counsel, Urquhart accepted and entered a plea of guilty to two counts of Drug Dealing (one at a lower tier weight as a lesser included offense) on January 6, 2016. The plea agreement called for a

---

[2] Drug Dealing marijuana and Possession of Drug Paraphernalia did not carry any mandatory jail time.

[3] D.I. #19.

2

presentence investigation, a minimum/mandatory Level 5 period of two years, and the State agreed to cap its recommendation of unsuspended Level 5 time at 4 years. It is important to note that Counsel never received a copy of the Office of the Chief Medical Examiner ("OCME") controlled substances laboratory report confirming the suspected substances or weights as part of the discovery because the drugs had not yet been tested by the time Urquhart entered his guilty plea.[4] The State submitted documentation showing that once Urquhart had pled guilty, the State contacted the OCME and requested that the drugs be removed from the testing schedule.[5]

Urquhart was sentenced on March 11, 2016, to three and one-half years of unsuspended Level 5 time, followed by probation. Urquhart did not file an appeal to the Delaware Supreme Court, but he did file a motion for sentence modification that was denied on July 14, 2016.[6]

---

[4] State's Letter Response, April 6, 2017, D.I. # 27, Exhibit A.

[5] *Id.*

[6] D.I. #13.

Urquhart filed the instant Motion on October 14, 2016.[7]  In his Motion, Urquhart's claims for postconviction relief, quoted verbatim, are as follows:

Ground One:     Ineffective Assistance of Counsel.  Counsels lack of investigation into questioning whether or not what the police department found at my residence as well as why they were even interested in my apprehension were authenticated by anyone besides themselves.

Ground Two:     Ineffective Assistance of Counsel/suppression of Favorable Evidence.  Due to a lack of interest in pursuing results of crucial evidence that could've been suppressed, I was wrongly convicted by evidence that was possibly tampered with that was later revealed to me after my plea agreement was signed, with notarized documents to support my accusation.

Ground Three:   Ineffective Assistance of Counsel/Involuntary or coerced plea.  Due to my inability to comprehend to what my counsel had to repeatedly explain to me about the various guidelines concerning sentences for drug charges along with the process of it all I reverted back to my looming family turmoil that has since spiraled to wear doom.  I was promised by counsel that she would request the minimum of two years, but later failed to request anything less than three years.

---

[7] D.I. #15.

The Motion was referred to Judge Wallace who issued an Order to Expand the Record and briefing schedule on October 18, 2016.[8] Counsel filed her Affidavit on December 13, 2016. The State filed its Response on March 20, 2017.

However, just prior to the State's Response, on March 17, 2017, Urquhart filed a document titled "Motion to Amed/Expand The Record. Crim. Rule 61(g) And to Compel Discovery of Missing Document, Crim Rule (16)."[9]  In this document, Urquhart raised a number of additional grounds for relief—very unhelpfully in narrative form.  As best I can discern, Urquhart makes the following arguments: (1) Counsel knew about the misconduct at the OCME as she was counsel in *State v, Binard*, 2016 WL 358990 (Del. Super. January 22, 2016), (2) Counsel was ineffective for failing to request or obtain Discovery (i.e. the laboratory report) regarding the drugs before advising him to plead guilty, (3) Counsel wore "two hats" and coerced him into pleading guilty such that his plea was unknowingly, unintelligently and involuntarily entered, (4) that had he been in possession of the laboratory report there is a "great probability" of a different result, (5) that the laboratory report was "intentionally" withheld by the State and the State negotiated the plea in "bad faith," (6) Counsel never advised him that without the report the

---

[8] D.I. #18.

[9] D.I. #24.

5

State could not proceed to trial, and (7) that the misconduct in the OCME and with chemist Bipin Mody violated his due process rights and prejudiced him.

The State filed a Response to the Amended Motion on April 6, 2017.[10] Urquhart filed a Reply on June 19, 2017.[11] In his Reply, Urquhart requested an evidentiary hearing. Per Judge Wallace's request, the State filed a short response on September 28, 2017, arguing that the request for the evidentiary hearing should be denied.[12]

The matter was referred to the undersigned commissioner on December 6, 2017. I have thoroughly reviewed the record in this case, including the additional information and transcripts provided by the parties in response to the allegations, and do not believe an evidentiary hearing is necessary or warranted.

## Legal Standard

To prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[13] The first prong requires a defendant to show

---

[10] D.I. #27.

[11] D.I. #30.

[12] D.I. #33.

[13] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires a defendant to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[14]

When a court examines a claim of ineffective assistance of counsel, it may address either prong first; where one prong is not met, the claim may be rejected without contemplating the other prong.[15] Mere allegations of ineffectiveness will not suffice—a defendant must make and substantiate concrete allegations of actual prejudice.[16] An error by defense counsel, even if professionally unreasonable, does not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[17]

In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be viewed from his or her perspective at the time decisions were being made.[18] A fair assessment of attorney performance requires that every effort is made to eliminate the distorting efforts of hindsight. Second

---

[14] *Id.*

[15] *Id.* at 697.

[16] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[17] *Strickland*, 466 U.S. at 691.

[18] *Id.*

guessing or "Monday morning quarterbacking" should be avoided.[19] Most germane to this case, "[i]n order to prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, a defendant must show that, but for his counsel's unprofessional errors, he would not have pleaded guilty but would have insisted on proceeding to trial."[20]

## Analysis

The procedural requirements of Superior Court Criminal Rule 61 must be addressed before considering the merits of any argument.[21] Urquhart's Motion was timely filed and is not repetitive, thus satisfying the requirements of Rule 61 (i)(1) and (2). All of Urquhart's claims can be divided into one of three broad categories:

### 1. Complaints about Counsel

In Urquhart's initial Motion, he makes various complaints about the police investigation, Counsel's "lack of interest," and his inability to comprehend the situation he found himself in. All of his vague complaints are meritless and unsupported by the record. By entering a guilty plea, Urquhart waved any right to challenge the police investigation/search of his residence and vehicles. Urquhart

---

[19] *Id.*

[20] *Miller v. State*, 840, A.2d, 1229, 1231 (Del. 2003) (citing *Somerville v. State*, 703 A.2d 629, 631 (Del.1997)).

[21] *See Younger*, 580 A.2d at 554.

8

acknowledged this fact during his guilty plea colloquy.[22] Additionally, as outlined above, the record belies Urquhart's claims that Counsel showed a lack of interest in his case, or that he did not understand what he was facing when he decided to plead guilty.[23] Urquhart's claim that he was "wrongly convicted by evidence that was possibly tampered with," is simply false. The drugs locate by police were never handled or tested by the OCME. However, the drugs did field tested positive and Urquhart admitted that he sells drugs. Urquhart's final claim, that Counsel "promised" she would request the minimum of two years," is unsupported by the record and without merit. Urquhart was well aware of the penalty range he faced at the time of sentencing and acknowledge during the plea colloquy that no one had promised him what his sentence would be.[24]

## 2. Laboratory report and misconduct in the OCME

All of Urquhart's arguments regarding the failure of Counsel to obtain the controlled substances laboratory report, the misconduct that occurred within the OCME, and with chemist Bipin Mody, are misplaced and meritless. Additionally, Urquhart makes much of Counsel statement in her Affidavit that "if I had known about the long-standing problems with Mr. Mody, my advice to Mr. Urquhart would likely had been different." The simple fact is whatever had occurred within the

---

[22] D.I. #25, State's Response, Exhibit A, p. 9.

[24] D.I. #25, State's Response, Exhibit A, p. 8.

9

OCME and with Bipin Mody, it had no effect on this case or Urquhart's decision to plead guilty. The record is clear: the drugs were never handled by Mody or tested by the OCME because the case resolved with a guilty plea prior to the testing deadline. Thus, *no party* to this case relied on OCME testing to make strategic decisions during the litigation. Additionally, I am unpersuaded by Counsel's remark that her advice "likely" would have been different had she known about problems within the OCME—Counsel never elaborates as to why or in what way her advice to Urquhart *might* have been different.

More importantly, however, the Delaware Supreme Court has already considered this very argument and rejected it. In *Aricidiacono v. State*, the Court reiterated that "if a defendant knowingly pled guilty to a drug crime, he [can] not escape his plea by arguing that had he known that the OCME had problems, he would not have admitted to his criminal misconduct in possessing illegal narcotics."[25] The holding in *Aricidiacono* is squarely on-point with the facts in this case. Finally, this issue could have been raised on direct appeal by Urquhart, but was not, making it barred by Rule 61(i)(3).

Despite what Urquhart might think, the fact that Counsel advised Urquhart to accept the State's plea offer before she had obtained the laboratory report is in no

---

[25] *Aricidiacono*, 125 A.3d 677, 678 (Del. 2015) (citing *Brown v. State*, 108 A.3d 1201,1202 (Del. 2015)).

way per se indicative of deficient performance or professionally unreasonable. The record clearly establishes that Counsel was very familiar with the facts and various legal issues in the case, and most importantly, the dangers inherent in rejecting the State's generous early plea offer and continuing the litigation. In my opinion, Counsel correctly estimated that even if she had able to win a suppression motion, it was not case-dispositive and the balance of the drugs in the vehicle would still have been admissible at trial. Additionally, had Urquhart pursued the suppression motion, there was no guarantee that the State would have made as generous of a plea offer in the future.[26]

Urquhart's *Brady* violation arguments are also meritless. In *Brown v. State*, the Delaware Supreme Court held that evidence of misconduct within the OCME was relevant as impeachment evidence only.[27] Thus, the State was under no obligation to turn over any evidence regarding Mody at the time Urquhart pled guilty. This is especially true considering the fact that *no* chemist had yet tested the drugs.

Urquhart's claim that Counsel should have known about the problems within the OCME due to her involvement in the *Binard* case, and thus rendered different advice, is also misplaced. First, the ultimate result in *Binard* is unhelpful to

---

[26] D.I. #25, p.4-5.

[27] *Brown v. State*, 108 A.2d 1201, 1027 (Del. 2015).

11

Urquhart—Binard's conviction, following his guilty plea, was upheld by the Delaware Supreme Court.[28] Second, and most importantly, the issue in the *Binard* case involved known misconduct by a different chemist within the OCME—who had actually tested the drugs in question—not Bipin Mody.

### 3. Coerced Guilty Plea

Urquhart alleges that he was "coerced" into accepting a guilty plea. However, he has proffered no specific facts or examples to explain how he was coerced by Counsel. Outside of bare conclusory allegations, there is nothing in the record to indicate that he was not properly represented or advised by his lawyer before he entered his guilty pleas. In fact, the record indicates that Counsel spent a considerable amount of time speaking with him about the case, negotiating with the State and corresponding with him prior to the entry of his plea. In my estimation, all of the guilty plea paperwork and the transcript from the plea colloquy clearly indicates that Urquhart made a calculated decision and was aware of exactly what he faced when he made his decision. If is far more likely that Urquhart felt pressured to accept the guilty plea, because had he gone to trial and been convicted, he faced at least eight years minimum/mandatory at Level 5, as opposed to the two years he faced under the plea agreement. Urquhart seems to forget that he made admissions to police at the time of his arrest that most likely would have resulted in guilty

---

[28] *Binard v. State*, 155 A.3d 1331 (Del. 2017).

verdicts as to all of the drugs located in the shed. And, even if the drugs in the shed had been suppressed, the evidence linking him to the substantial quantity of drugs in the vehicle parked in his driveway—that had been rented in his name—was substantial.

## Conclusion

For the foregoing reasons, Counsel's representation was professionally reasonable and Urquhart's Motion should be **Denied**.

**IT IS SO RECOMMENDED.**

Bradley V. Manning,
Commissioner


oc: Prothonotary
cc: Defendant via first class mail, all counsel via e-mail