# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALONZO CANNON, | § | |
| | § | No. 68, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware, |
| v. | § | in and for Sussex County |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID. No. 0010006075 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 28, 2015
Decided: November 9, 2015

Before **HOLLAND**, **VALIHURA**, and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

J. Brendan O'Neill, Esquire, Nicole M. Walker, Esquire, and Elliot Margules, Esquire, Office of the Public Defender, Wilmington, Delaware, for Defendant Below, Appellant, Alonzo Cannon.

Elizabeth R. McFarlan, Esquire, Chief of Appeals, Department of Justice, Wilmington, Delaware, for Plaintiff Below, Appellee, State of Delaware.

**SEITZ**, Justice:

## I.    Introduction

In 2001, a Superior Court jury convicted Alonzo Cannon of offenses related to possession of cocaine and marijuana.  At trial, the State introduced evidence that after being read his *Miranda* rights, Cannon confessed to police that the drugs were his and also where he obtained them.  The trial judge sentenced Cannon to eighteen years unsuspended jail time followed by decreasing levels of supervision.  This Court affirmed his convictions and sentence on direct appeal.  The Superior Court denied Cannon's first motion for postconviction relief, and this Court dismissed his appeal from the first motion as untimely filed.

On January 8, 2015, with the assistance of counsel, Cannon filed a second motion for postconviction relief, claiming that the State's failure to disclose misconduct in the Office of the Chief Medical Examiner ("OCME") violated the State's obligation under *Brady v. Maryland*,[1] and that an evidentiary hearing was required to explore the *Brady* issue further.  The motion was a lengthy form motion filed in a number of cases raising misconduct at the OCME.[2]  The Superior Court summarily dismissed the motion, and found there was no evidence to support Cannon's contention that the misconduct at the OCME was ongoing during his

---

[1] 373 U.S. 83 (1963).

[2] For instance, the motion contained an argument section addressing guilty pleas, which has no relevance here because Cannon went to trial.  App. to Opening Br. at 111-18 (Second Mot. for Postconviction Relief).

trial in 2001, or that the misconduct involved false chemical analysis reporting as opposed to theft.[3]

On appeal, Cannon has for the first time tailored his arguments to his case, and claims that the Superior Court erred because he raises a substantial issue about whether the OCME misconduct was ongoing at the time of his trial. The State has responded that Cannon's motion is barred by amended Superior Court Criminal Rule 61, and in any event, Cannon admitted to the crimes, and the drugs field tested positive for illegal substances, so the motion should be denied.

After careful review of the record, we find that the issues on appeal were not fairly raised before the Superior Court, and Rule 61 bars Cannon's claims because he does not allege actual innocence. Even if we reached the merits of his claims, they would be barred due to the overwhelming evidence of guilt presented at trial. Therefore we affirm the Superior Court's judgment.

## II. Facts and Procedural History

On October 10, 2000, Alonzo Cannon, in violation of probation conditions, spent the night at the Little Creek Apartments in Laurel. Two probation officers, as well as Delaware State Police Corporals Wayne Warren and Rodney Layfield, knew Cannon frequented the residence and attempted to locate him there. The

---

[3] Ex. A. to Opening Br. (Letter Opinion).

3

officers knocked on the door of the apartment and Priscilla Barnes opened the door.

Barnes told the officers that she did not believe Cannon was in the apartment but permitted the officers to perform a search. The officers discovered Cannon inside Barnes' daughter's locked room, naked in bed with Barnes' underage daughter. Corporal Warren observed Cannon's clothes at the foot of the bed and a man's jacket to the right of the bedroom doorway.

The officers searched the jacket and found eleven individually wrapped bags of marijuana and twelve individually wrapped bags of cocaine. The bags tested positive for the drugs using a field test.[4] The police read Cannon his *Miranda* rights. Cannon first denied, but then admitted to owning the jacket.[5] He also admitted to using marijuana, but denied using cocaine.[6] In a subsequent interview, Cannon admitted the narcotics belonged to him, and he told Corporal Layfield that he obtained them in Wilmington.[7]

At trial, Cannon stipulated to the qualifications of Farnam Daneshgar, a forensic chemist employed by the Office of the Chief Medical Examiner ("OCME"), as an expert narcotics analyst. Daneshgar testified that he tested five

---

[4] App. to Answering Br. at 4 (Prelim. Hearing Test. of Cpl. Rodney Layfield).
[5] *Id.* at 10 (Suppression Hearing Test. of Officer Timothy Jones).
[6] *Id.* at 8.
[7] *Id.* at 19 (Suppression Hearing Test. of Cpl. Rodney Layfield).

random bags of each substance and determined the contents to be marijuana and cocaine. After a three-day trial, the jury found Cannon guilty of possession with intent to deliver marijuana, possession with intent to deliver cocaine, two counts of possession of contraband within 1,000 feet of a school, possession of drug paraphernalia, and criminal impersonation. He was sentenced to eighteen years of unsuspended jail time followed by decreasing levels of supervision.

This Court affirmed Cannon's conviction on direct appeal.[8] In May, 2003, the Superior Court denied Cannon's first motion for postconviction relief.[9] Cannon appealed, and this Court dismissed the appeal as untimely.[10] In 2005, Cannon filed a petition for a writ of habeas corpus in the United States District Court for the District of Delaware. The district court denied the petition as untimely and declined to issue a certificate of appealability.[11]

On January 8, 2015, fourteen years after his conviction, Cannon filed a second motion for postconviction relief based on the OCME misconduct allegations. On January 16, 2015, the Superior Court denied the motion. The court reasoned that Cannon failed to present evidence that the "mischief" in the

---

[8] *Cannon v. State*, 790 A.2d 475 (Del. 2002) (Table).
[9] *State v. Cannon*, 2004 WL 1551500 (Del. Super. June 16, 2004).
[10] *Cannon v. State*, 858 A.2d 960 (Del. 2004) (Table).
[11] *Cannon v. Carroll*, 2006 WL 2949302 (D. Del. Oct. 17, 2006).

OCME was ongoing at the time of his trial.[12] The court also found that the OCME investigation did not involve false chemical reporting (the claim raised in Cannon's case), relying on the Superior Court's decision in *State v. Irwin*.[13]

## III. Analysis

For the first time on appeal, Cannon argues that the Superior Court erred in denying his motion because evidence existed at the time of his conviction in 2001 that misconduct was occurring at the OCME, specifically involving Farnam Daneshgar, the expert witness who testified at Cannon's trial. Because this argument was not presented to the Superior Court, and the interests of justice are not served by departing from the rule, we would ordinarily not consider it for the first time on appeal.[14]

Even if the interests of justice required us to reach Cannon's newly raised argument, he has failed to meet the procedural requirements of Rule 61(i).[15] Under

---

[12] Ex. A. to Opening Br. (Letter Opinion).

[13] 2014 WL 6734821 (Del. Super. Nov. 27, 2014) (noting that the OCME investigation revealed serious issues relating to the storage of evidence and security at the lab, drug evidence that was sent for testing but was never actually tested, and pilfering of drugs in evidence, though there was no evidence that any employee planted drugs to obtain false convictions).

[14] Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

[15] *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990). Cannon filed his motion six months after Rule 61 was amended on June 4, 2014, so the new Rule applies to his motion. *See* Order Amending Super. Ct. Crim. R. 61 ("This amendment shall be effective on June 4, 2014 and shall apply to postconviction motions filed on or after that date.").

Rule 61, the Superior Court will summarily dismiss a second postconviction motion unless the movant was convicted after a trial and the movant either:

> (i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or

> (ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.[16]

Cannon pled with particularity that there was new evidence involving the OCME, but did not plead with particularity how that evidence affected his conviction. This misstep was a function of filing a boilerplate motion. Cannon also did not plead in the trial court that the new evidence created a strong inference that he was actually innocent of the drug charges. Therefore, Cannon's motion fails to meet the requirements of Rule 61 and should have been dismissed by the Superior Court on this ground.

Cannon's motion would fail on the merits as well. Cannon claims that the Superior Court erred in two respects when it summarily dismissed his motion for postconviction relief. First, the Superior Court dismissed the motion without determining whether there was a need for an evidentiary hearing; and second, the

---

[16] Super. Ct. Crim. R. 61(d)(2) (2014).

court relied on an inapplicable factual finding in *State v. Irwin* that the misconduct involved "pilfering and theft of drugs, not false chemical analysis reporting."[17]

On the evidentiary hearing point, whether to hold an evidentiary hearing is within the discretion of the trial judge.[18] Because of the boilerplate nature of Cannon's motion, there was nothing for the trial court to consider other than the recent well-publicized allegations of misconduct by the OCME, and Cannon failed to link those allegations to his conviction over a decade ago. In addition, as we have found in prior opinions dealing with OCME problems, to date nothing has surfaced to suggest that the OCME was falsifying evidence. Instead, the OCME problems involved theft or drylabbing.[19] Therefore, general allegations of OCME

---

[17] Ex. A to Opening Brief (Letter Opinion).

[18] Super. Ct. Crim. R. 61(h) (2014) (the judge shall determine whether an evidentiary hearing is "desirable"); *Getz v. State*, 77 A.3d 271 (Del. 2013), *cert. denied*, 134 S. Ct. 1958 (2014) ("Rule 61 does not mandate the scheduling of an evidentiary hearing in every case, but, rather, leaves it to the Superior Court to determine whether an evidentiary hearing is needed."); *Shelton v. State*, 744 A.2d 465, 510 (Del. 2000) ("Given the trial judge's extensive familiarity with the background of this case, we are unable to conclude that he abused his discretion in determining that an evidentiary hearing was not necessary."); *Maxion*, 686 A.2d at 151 ("If the Superior Court determines in its discretion that an evidentiary hearing is unnecessary, such as in [appellant's] case in which all of the issues raised were barred by the procedural requirements of Rule 61(i), then summary disposition of the motion is entirely appropriate.").

[19] *See Aricidiacono v. State*, -- A.3d --, 2015 WL 5933984 (Del. Oct. 12, 2015) (no evidence of evidence tampering); *Anzara Brown v. State*, 117 A.3d 568, 581 (Del. 2015); *Ira Brown v. State*, 108 A.3d 1201, 1204–05 (Del. 2015) ("There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff 'planted' evidence to wrongly obtain convictions."); *Brewer v. State*, 2015 WL 4606541, at *1–3 (Del. July 30, 2015); *Patrick L. Brown v. State*, 2015 WL 3372271, at *1–2 (Del. May 22, 2015); *State v. Ringgold*, 2015 WL 3580742, at *3 (Del. Super. June 2, 2015) ("There was no evidence to suggest that OCME employees planted evidence to

misconduct would not warrant an evidentiary hearing for a conviction dating back to 2001.

The Superior Court also found there was "absolutely no evidence that the mischief in the M.E.O. was ongoing fifteen years ago" when Cannon was tried.[20] For the first time on appeal, Cannon argues that an internal audit report prepared by the Delaware Department of Justice and Delaware State Police found that certain employees had accused Daneshgar, the State's expert witness at Cannon's trial, of drylabbing since 2006.[21] The Report found that Daneshgar may have left the OCME in 1990 after allegations of drylabbing. The Report also says Daneshgar did not work for the OCME in 2001. This conflicts with the fact that Daneshgar testified as a chemist on behalf of the OCME at Cannon's 2001 trial and at least one other time in 2005.[22] The record does not reflect whether Daneshgar was working as an expert witness but not employed by OCME, or if the Report is inaccurate.

Cannon has made no claim of actual innocence. "The mere existence of the ongoing scandal at the OCME does not *ipso facto* create a colorable claim that there was a miscarriage of justice nor does it create a strong inference that the

wrongly obtain convictions. Nor was there evidence that the substances actually tested by the chemist were false.").

[20] Ex. A. to Opening Br. (Letter Opinion).

[21] *See* App. to Opening Br. at 42 (Investigation of Missing Drug Evid. Prelim. Findings).

[22] *See Hicks v. State*, 913 A.2d 1189 (Del. 2006).

defendants are actually innocent."[23] Furthermore, the fact that the Report singled out Daneshgar as having been accused by fellow employees of drylabbing in 1990 and 2006 does not mean that the State had any evidence or knowledge of the drylabbing at the time of Cannon's trial in 2001.[24] We have previously held that because the wrongdoing at the OCME was not known until 2014, incidents not falling within the relevant time period fail to qualify as *Brady* violations.[25] Therefore, the Superior Court's finding that no evidence supported Cannon's petition was not an abuse of discretion.

Finally, the overwhelming evidence of Cannon's guilt would neutralize any possible *Brady* violation.[26] Cannon admitted to possessing the illegal drugs, which

---

[23] *State v. Anderson*, 2015 WL 2067158, at *3 (Del. Super. Apr. 20, 2015), *reargument denied sub nom. State v. Banks*, 2015 WL 4400130 (Del. Super. June 17, 2015).

[24] *See Liu v. State*, 103 A.3d 515 (Del. 2014) (Table) ("There are three components of a *Brady* violation: (1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."); *Starling v. State*, 882 A.2d 747 (Del. 2005) (holding that suppression is required to constitute a *Brady* violation).

[25] *See Hickman v. State*, 116 A.3d 1243 (Del. 2015) (Table) ("The alleged misconduct by OCME employees was not revealed until 2014, and thus did not raise a concern that the State concealed material impeachment evidence, as required to find a *Brady* violation."); *see also United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008) (prosecution has a duty to disclose evidence within its and its agents' actual knowledge and possession).

[26] *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995) ("One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."); *Thompson v. State*, 919 A.2d 562 (Del. 2007) ("Reversal under *Brady* is required only when the defendant is able to show 'that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"); *Jackson v. State*, 770 A.2d 506, 517 (Del. 2001) (confidence in guilty verdict in capital murder prosecution was not undermined by *Brady* violation).

was corroborated by a witness at the scene. Moreover, Cannon told police, in a *Mirandized* statement, that the drugs in the jacket were his, and that he bought them in Wilmington.[27] He admitted he possessed cocaine and marijuana.[28] Police found the jacket in the locked room where Cannon was found. Finally, the drugs found in Cannon's jacket field-tested positive for cocaine and marijuana. The evidence taken as a whole does not cast Cannon's conviction in a different light such that it undermines confidence in the verdict. Cannon's claim would fail even if we ignored the procedural bars to his claims.

NOW THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

---

[27] App. to Answering Br. at 73, 79 (Trial Test. of Cpl. Rodney Layfield). Possession with intent to deliver requires possession of a controlled substance with intent to deliver it. *Morales v. State*, 696 A.2d 390, 394 (Del. 1997). To prove intent, the prosecution must provide expert testimony that the packaging and quantity of the heroin found in is consistent with an intent to sell the drugs rather than to use them personally. *Id.* The crime of possession with intent to deliver was repealed in 2011. 16 *Del. C.* § 4751 (Repealed).

[28] App. to Answering Br. at 73 (Trial Test. of Cpl. Rodney Layfield).