**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM D. BURTON, | ) | Cr. A. No. 1301022871 |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Date Decided: April 30, 2018

On Defendant William Burton's Motion for
Postconviction Relief. **DENIED.**

## ORDER

On January 31, 2013 following up on a tip from a past-proven reliable informant an administrative search was conducted in the residence of William Burton (Defendant) who was at the time a Level II probationer and registered sex offender. The informant stated that an active probationer was selling crack cocaine from his residence. During the search of Defendant's residence police discovered in his bedroom baggies, a digital scale, a plate with an off-white substance, a razor blade, a grinder, smoking papers, and clear zip-lock bags with a plant like substance consistent in appearance with marijuana. Police also discovered a clear plastic bag containing a white, powdery substance consistent in appearance with cocaine located

1

in a jacket in Defendant's bedroom closet. The powdery substance and plant like substance field tested positive for cocaine and marijuana respectively. The evidence seized was found to have preliminary weights of 1 gram of marijuana and 29 grams of cocaine. Defendant was arrested and a New Castle County Grand Jury indicted Defendant on charges of Drug Dealing, aggravated possession of Cocaine, two counts of Marijuana possession and Possession of Drug Paraphernalia. Following a one-day bench trial the Court found Defendant guilty of aggravated possession of cocaine, drug dealing, possession of marijuana, and possession of drug paraphernalia. Defendant was sentenced to life in prison as a habitual offender for drug dealing cocaine tier 4 quantity. The tier 4 quantity for cocaine is 20 grams or more of cocaine or of any mixture containing cocaine.[1]

## Parties' Contentions

Defendant makes two claims for postconviction relief; That the State violated Defendant's right to due process, committing a *Brady* violation by withholding evidence favorable to Defendant in violation of the United States and Delaware Constitutions, and that Trial Counsel was ineffective in permitting Defendant to stipulate to State's evidence without Defendant's knowledge or consent. The State contends that Defendant's claim of a *Brady* violation has previously been addressed

---

[1] 16 *Del. C.* §4751C

by the Delaware Supreme Court in affirming the decision of this Court. In response to Defendant's ineffective assistance of counsel claim State contends that Defendant has not raised any concrete allegations of prejudice.

## Discussion

The Court must address Defendant's motion in regard to Rule 61(i) procedural bars to relief before assessing the merits of his motion.[2] The State has conceded and the Court agrees that Defendant's motion is not time barred or repetitive. Rule 61(i)(3) bars relief if the motion includes claims not asserted in the proceedings leading to the final judgment.[3] This bar is also not applicable as to the Defendant's claim of ineffective assistance of counsel, which could not have been raised in any direct appeal.[4] Finally, Rule 61(i)(4) bars relief if the motion is based on a formally adjudicated ground.[5]

## Suppression of *Brady* Evidence

Defendant claims that additional information has come to light and therefore reconsideration is warranted in the interest of justice and thus should not be barred procedurally under Rule 61(i)(4). This claim forms the basis of Defendant's Due

---

[2] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[3] Super. Ct. Crim. R. 61(i)(3).
[4] *See State v. Berry*, 2016 WL 5624893, at *4 (Del. Super. Ct. June 29, 2016); *see also Watson v. State*, 2013 WL 5745708, at *2 (Del. 2013).
[5] Super. Ct. Crim. R. 61(i)(4).

Process argument that the State withheld exculpatory evidence in violation of the Supreme Court of the United States' holding in Brady v. Maryland. [6] Defendant claims that evidence was available pertaining to the Office of the Chief Medical Examiner ("OCME") drug evidence scandal and that this evidence is favorable to him and that it was withheld by the State in prior proceedings before this Court and the Supreme Court. Defendant offers accusations made against the OCME forensic chemist responsible for testing the evidence related to his conviction, the suspension of the same forensic chemist for unspecified reasons, and the resignation of two other OCME staff members as new evidence of the alleged *Brady* violation.

The Court considers *Brady* claims under Rule 61(i)(5) narrow "miscarriage of justice" exception.[7] The Supreme Court set forth the proper analysis for claims of a *Brady* violation.

The reviewing Court may also consider any adverse effect from nondisclosure on the preparation or presentation of the defendant's case. There are three components of a Brady violation: (1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the

---

[6] 373 U.S. 83 (1963). ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.")
[7] *Wright v. State*, 91 A.3d 972, 985 (Del. 2014).

4

State; and (3) its suppression prejudices the defendant." In order for the State to discharge its responsibility under Brady, the prosecutor must disclose all relevant information obtained by the police or others in the Attorney General's Office to the defense. That entails a duty on the part of the individual prosecutor "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."[8]

The first prong of *Brady* must be reviewed in the light of the Court's decision in *State v. Irwin*. In *Irwin* the Court set forth a bright line that a defendant will only be allowed to present evidence or question State's witnesses regarding the OCME investigation only if there is a discrepancy in weight, volume or contents from what is described by the seizing officer.[9] In *Irwin* the Court acknowledges that discrepancy in weight due to a multitude of factors is not uncommon.[10] Furthermore a balance must be struck as to the explanation of any discrepancy to the finder of fact so that they may determine if the evidence offered at trial is that which was seized from the defendant.[11] The discretion to limit the extent of the evidence regarding the OCME investigation remains with the trial judge.[12] Additionally,

_____

[8] *Id.*
[9] *State v. Irwin*, 2014 WL 6734821 at *12
[10] *Id.*
[11] *Id.* at *13
[12] *Id.* at *12

unlike other scandals, there has been no evidence to suggest that OCME staff tampered with evidence in order to achieve positive results or to secure convictions.[13]

This Court applied the *Irwin* test to the facts of this case when considering Defendant's motion for a new trial, and declines to reiterate that analysis here.

Moving to the second prong of *Brady* Defendant offers accusations directed against the forensic chemist responsible for testing the evidence related to his conviction, the suspension of the same forensic chemist for unspecified reasons, and the resignation of two other OCME staff members. There was no indication of wrongdoing at the OCME until after Defendant was found guilty and sentenced in late 2013. Defendant's direct appeal and motion for new trial came after the revelation of the OCME scandal in 2014. These two proceedings asserted that the State was in possession of *Brady* material related to the OCME scandal which the State withheld from Defendant. This Court and the Delaware Supreme Court found no merit to these claims. Information regarding the OCME investigation has become widespread and a matter of public record since 2014. Defendant has offered no

---

[13] *Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015) (distinguishing from *U.S. v. Hampton*, 66 F.Supp3d 247 (D.Mass 2015), noting that a laboratory chemist in Massachusetts had pleaded guilty to multiple charges of tampering with evidence by adding controlled substances to the samples she tested in order to achieve a positive test result).

evidence that there has been misrepresentation or concealment on the part of the State prior to any of his proceedings.

The third prong in determining if a *Brady* violation occurred is to determine if Defendant has been prejudiced as a result of suppression of evidence. To date Defendant has claimed violations of his Constitutional rights, appealed his case to the Delaware Supreme Court, and now moves for postconviction relief. Defendant at no time has argued that any new evidence has created a strong inference that he is actually innocent of the drug charges for which he was convicted.[14] Defendant did not challenge the chain of custody in his initial trial and made no indication that the evidence seized from his residence was not the evidence that was presented at his trial. This Court held a bench trial in which Defendant was found guilty beyond a reasonable doubt. No evidence has been proffered to indicate that Defendant has been prejudiced as a result of the OCME investigation and the fallout therefrom.

Defendant's case mirrors that of the similarly situated defendants considered in the decision of *State v. Miller*.[15] "With regard to the defendants who were convicted at trial, the motions ignore that the identity and weight of the drugs was undisputed in all three cases. Facts concerning the controlled substances and the OCME lab reports were stipulated to and admitted into evidence without

---

[14] *Cannon v. State*, 127 A.3d 1164, 1167 (Del. 2015).
[15] *State v. Miller*, 2017 WL 1969780 (Del. Super Ct. 2017)

objection."[16] Furthermore "Evidence of the unfortunate practices and events transpiring at the OCME did not exist until early 2014, and there can be "no retroactive Brady violation for failing to report what was not known."[17]

Defendant had the opportunity to contest the evidence seized from his home and presented at trial, but did not do so. Defendant had the opportunity to contest the evidence presented against him while his case was stayed in light of revelations of wrongdoing at the OCME, but again failed to do so. There was sufficient evidence of guilt to convict beyond a reasonable doubt in Defendant's case. Defendant has been unable to present evidence to support that the events at the OCME affected his case specifically other than accusations leveled at OCME staff members generally. As such any potential impeachment evidence based on the OCME scandal does not place the conviction of Defendant in such a light so as to "undermine confidence" in his guilty verdict.[18]

## Ineffective Assistance of Counsel

Defendant asserts that his trial counsel was ineffective in failing to contest the evidence presented at trial thereby violating his constitutional rights. Defendant

---

[16] *Id.* at *7
[17] *Id.* at *8
[18] *Id.*

agreed to a bench trial in order to preserve the right to appeal the Court's ruling on his suppression motion.

Delaware adopted the two-prong test proffered in *Strickland v. Washington* to evaluate ineffective assistance of counsel claims.[19] To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[20]

To avoid the "distorting effects of hindsight," counsel's actions are afforded a strong presumption of reasonableness.[21] The "benchmark for judging any claim of ineffectiveness [is to] be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[22] The Court's objective in evaluating counsel's conduct is

---

[19] *See Strickland v. Washington*, 466 U.S. 668 (1984); *see also Albury v. State*, 551 A.2d 53 (Del. 1988).

[20] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990); *see also Strickland v. Washington*, 466 U.S. 668 (1984).

[21] *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) (citing *Strickland v. Washington* at 689).

[22] *State v. Wright*, 2015 WL 648818, (Del. Super. Ct. Feb. 12, 2015)(citations omitted).

to "reconstruct the circumstances of counsel's challenged conduct, and to *evaluate the conduct from the counsel's perspective at the time.*"[23]

If Defendant can demonstrate that counsel's conduct failed to meet an objective standard of reasonableness the second prong of the *Strickland* analysis requires the Court to determine what, if any, effect counsel's ineffectiveness had on the outcome of Defendant's trial.[24] "[The Court] will not set aside the judgment in a criminal proceeding if the error had no effect on the outcome."[25] Defendant must show that but for counsel's ineffectiveness a more favorable result is not just conceivable, but rather the likelihood of a favorable outcome is substantial.[26]

Defendant bases his claim of ineffective assistance of counsel argument on the grounds that by relying on the record of Defendant's suppression hearing Counsel was unreasonable. There are two issues that can be extracted from this argument; 1) Defendant voluntarily waived his right to a trial by jury, and 2) a strategic choice was made in waiving a trial by jury.

*Strickland* provides that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and

---

[23] *Neal*, 80 A.3d 935 at 942. (citing *Strickland v. Washington*, at 689) (emphasis supplied).
[24] *Id.*
[25] *Id.* (citing *Strickland v. Washington*, at 692).
[26] *Id.*

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[27]

The decision to rely on the record developed at the suppression hearing in order to preserve that issue for appeal by proceeding with a bench trial is a strategic one. Counsel avers that as a matter of practice the decision to agree to a bench trial would have been clearly discussed with Defendant and that the consequences of doing so would be evaluated. Reviewing Counsel's actions from their prospective at the time the Court finds that they were reasonable. Information regarding the OCME scandal was not known until after Defendant's conviction. In light of information available to Counsel at the time strategic decisions were made in order to most effectively represent Defendant throughout various proceedings before the Court. Counsel's actions were representative of rational professional judgement and thus reasonable.

Similarly, the Court conducted a colloquy with Defendant and found that his decision to waive a trial by jury was knowing, intelligent, and voluntary. The colloquy included having discussed the decision with his attorney and understanding the benefits and potential repercussions of that decision. The decision to waive a

---

[27] *Strickland v. Washington*, 466 U.S. 668, 690–91(1984).

jury trial was made strategically with the advice of counsel. To claim now that the decision to waive a trial by jury equates to ineffective assistance of counsel is to apply the "distorting effects of hindsight" to a less than favorable outcome.

Defendant's claim fails the second prong of the *Strickland* test as well. Defendant has failed to offer any evidence that a more favorable outcome was substantially likely but for the ineffective assistance of counsel. Defendant claims that repercussions stemming from the OCME scandal might be sufficient to exculpate him, but fails to acknowledge that his motion for a new trial and subsequent appeal to the Delaware Supreme Court were reviewed in light of the Court's holding in *Irwin*. Defendant's proceedings after his trial are indicative of the fact that he suffered no prejudice as a result of ineffective assistance of counsel.

Defendant cannot show that the State withheld evidence in violation of *Brady*. This Court continues to hold that there can be no retroactive Brady violation for failing to report what was not known. Defendant's claims based on the fallout from the situation at the OCME have failed to undermine the confidence of his guilty verdict.

Defendant cannot show that Trial Counsel's representation fell below an objective standard of reasonableness. Defendant has also failed to demonstrate that any prejudice stemming from his counsel's representation can overcome the

12

overwhelming evidence of his guilt. The Defendant's Motion for Postconviction Relief pursuant to Rule 61 is hereby **DENIED** without further proceedings.

**IT IS SO ORDERED.**

_____
The Honorable Calvin L. Scott, Jr.