IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LESHAWN WASHINGTON, | § | |
| | § | |
| Defendant Below, | § | No. 68, 2024 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1101021242 (N) |
| | § | |
| Appellee. | § | |

Submitted: February 14, 2025
Decided: April 22, 2025

## **ORDER**

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The appellant, LeShawn Washington, filed this appeal from a Superior Court order adopting a Commissioner's report and denying Washington's second motion for postconviction relief under Superior Court Criminal Rule 61. For the reasons set forth below, this Court affirms the Superior Court's judgment.

(2) We previously described the events leading to Washington's convictions as follows:

In January, 2011, JoeQwell Coverdale, Washington, and several friends went to First State Lanes, a bowling alley in New Castle County.

Coverdale and one friend stayed in the parking lot smoking marijuana, while Washington and the others went into the bowling alley.

Sometime after Washington entered the bowling alley, Officer Jonathan Yard of the New Castle County Police Department, who was on patrol, decided to stop and go into the bowling alley. After Officer Yard arrived, he heard multiple gun shots fired inside the building. A great many screaming patrons began streaming out from the bowling alley. Six people were found wounded inside the bowling alley.

The record reflects that Washington was in possession of a handgun that evening. Later that evening, Washington said to Coverdale that he—Washington—had seen several people he "had a beef with" and "I think I got him, I think I hit one of them."

Anthony Stanley, one of the shooting victims, was interviewed on videotape by Detective Stephen Legenstein ("Detective Legenstein"). Stanley told the Detective that he was in a dispute with Washington, and this disagreement led to the shooting. Stanley identified Washington as the person who shot him, picking him out from a photo array. Stanley admitted he was shooting at Washington as well.[1]

The jury found Washington guilty of four counts of assault in the first degree, two counts of assault in the second degree, twelve counts of possession of a firearm during the commission of a felony, and six counts of first-degree reckless endangering. This Court affirmed the Superior Court's judgment on appeal.[2]

(3) On March 12, 2014, Washington filed a motion for postconviction relief asserting ineffective-assistance-of-counsel claims. After the submission of an affidavit by Washington's trial counsel and the State's response to Washington's

---

[1] *Washington v. State*, 2013 WL 961561, at *1 (Del. Mar. 12, 2013).
[2] *Id.*

motion, the Superior Court denied the motion for postconviction relief. This Court affirmed the Superior Court's judgment on appeal.[3] Washington then filed a petition for a writ of habeas corpus in the United States District Court for the District of Delaware that was dismissed as untimely.[4]

(4)     On August 23, 2022, Washington filed his second motion for postconviction relief under Rule 61. He asserted multiple claims, including violations of *Brady v. Maryland*,[5] prosecutorial misconduct, and ineffective assistance by his trial counsel, appellate counsel, and postconviction counsel. He also requested an evidentiary hearing. In its response to Washington's motion, the State argued that Washington's claims were procedurally barred and that Washington had not satisfied the exceptions to the procedural bars. Washington filed a reply, arguing that the version of Rule 61 in effect before the rule was amended effective June 4, 2014 should apply to his second postconviction motion.

(5)     Washington also filed an affidavit of Anthony Stanley and moved to compel the production of various documents. In the affidavit, Stanley stated that when police interviewed him he was injured, under the influence of morphine, and had been denied medical treatment despite repeated requests. He claimed that he never picked Washington out of a photo array or told the police that Washington

---

[3] *Washington v. State*, 2015 WL 789794 (Del. Feb. 14, 2015).
[4] *Washington v. Pierce*, 2017 WL 1843888 (Del. May 8, 2017).
[5] 373 U.S. 83 (1963).

shot him. As requested by the Superior Court, the State responded to this affidavit. With its response, the State included the recording of Stanley's interview with Detective Legenstein and argued that the recording refuted his affidavit. Washington moved to amend his postconviction motion by adding additional claims.

(6) A Superior Court Commissioner issued a report recommending summary dismissal of Washington's postconviction motion.[6] The Commissioner found that Washington's claims were procedurally barred and that he failed to plead with particularity new evidence creating a strong inference he was actually innocent of the acts underlying his convictions.[7] The Commissioner also found Washington's request for an evidentiary hearing moot. Washington objected to the Commissioner's report, arguing, among other things, that the pre-June 4, 2014 version of Rule 61 should apply to his claims. The Superior Court rejected Washington's reliance on the pre-June 4, 2014 version of Rule 61, adopted the Commissioner's report and recommendation, and denied Washington's postconviction motion. This appeal followed.

(7) On appeal, Washington argues that the Superior Court erred in: (i) applying the version of Rule 61 in effect at the time he filed his second postconviction motion instead of the version in effect before the June 2014

---

[6] *State v. Washington*, 2023 WL 5406164 (Del. Super. Ct. Aug. 18, 2023).
[7] *Id.* at *4-10.

4

amendments; (ii) failing to review his postconviction motion under *Martinez v. Ryan*[8] and excuse the procedural defaults for his claims of ineffective assistance; (iii) failing to follow this Court's holding in *Burroughs v. State*[9] and apply the version of Rule 61 in effect before the June 2014 amendments; (iv) finding that he failed to plead with particularity new evidence creating a strong inference he was actually innocent of the acts underlying his convictions; and (v) denying his motions to compel and for an evidentiary hearing. Washington has waived appellate review of claims he raised below, but did not argue on appeal.[10]

(8)     This Court reviews the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[11] We review legal or constitutional questions *de novo*.[12] Before addressing any substantive issues, we consider the procedural requirements of Rule 61 to determine whether any claims are procedurally barred.[13]

(9)     The first issue is which version of Rule 61 applies to Washington's second postconviction motion. "This Court repeatedly has held that a motion for postconviction relief is to be adjudicated in accordance with Rule 61 as it exists at

---

[8] 566 U.S. 1 (2012).
[9] 2014 WL 1515102 (Del. Apr. 16, 2014).
[10] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993).
[11] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[12] *Id.*
[13] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

the time the motion is filed."[14]  At the time Washington filed his second motion for postconviction relief in August 2022, Rule 61(d)(2) provided for summary dismissal of a second or subsequent motion for postconviction relief unless the movant was convicted after trial and pleaded with particularity new evidence creating a strong inference of actual innocence or a new rule of constitutional law retroactively applied and rendered the convictions invalid.[15]

(10)  Washington argues, however, that the version of Rule 61 that was in effect before the rule was amended effective June 4, 2014 must apply to his second postconviction motion.  Before the June 2014 amendments, the Rule 61 procedural bars did not apply to formerly adjudicated claims where reconsideration was warranted in the interest of justice or "to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[16]  Relying on *Bronshtein v. Horn*,[17] Washington contends that application of the amended version of Rule 61 violates federal due process and equal protection requirements because the 2014 amendments became

---

[14] *Purnell v. State*, 254 A.3d 1053, 1094 (Del. 2021).

[15] Rule 61(i)(5) also provided that certain procedural bars did not apply to a claim that the trial court lacked jurisdiction, but this exception is not relevant in this case.

[16] Super. Ct. Crim. R. 61(i)(4), (5) (2013).  Certain procedural bars also did not apply a claim that the trial court lacked jurisdiction, but as previously stated this exception is not relevant here. *Id.* (i)(5).

[17] 404 F.3d 700 (3d Cir. 2005).

effective without fair notice of the changes to the procedural bars. Specifically, he claims that he lacked fair notice at the time of his first postconviction motion that if he filed a second postconviction motion he would not have the benefit of the miscarriage of justice exception under the pre-June 2014 version of Rule 61.

(11) As the Superior Court found, *Bronshtein* is a federal habeas case that does not apply here. In *Bronshtein*, the United States Court of Appeals for the Third Circuit held that the doctrine of procedural default[18] did not bar federal habeas review of the merits of a capital defendant's claims, even though he had failed to file his motion for postconviction relief under the Pennsylvania Post Conviction Relief Act within one year after the end of direct review as required by the Act.[19] The Third Circuit concluded that Bronshtein's claims were not procedurally defaulted because the one-year time limit was not clearly established or regularly followed in capital cases at the time Bronshtein's time to file had expired.[20] *Bronshtein* does not support Washington's position that the version of Rule 61 in effect before the June 4, 2014 amendments had to apply to a second postconviction he filed on August 23, 2022

---

[18] This doctrine "prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment." *Fahy v. Horn*, 516 F.3d 169, 187 (3d Cir. 2008).
[19] *Id.* at 709-10.
[20] *Id.*

when the June 4, 2014 amendments had been clearly established and regularly followed for years.[21]

(12)  This Court has previously held that "the amended Rule 61 provides more due process and access to courts than is constitutionally required."[22] Washington had the opportunity to file a motion for postconviction relief under the pre-June 4, 2014 version of Rule 61 and did so.  He does not cite any relevant authority to support the dubious proposition that he had a right to hold back claims from his initial postconviction motion and then raise those claims in a successive motion without complying with the version of Rule 61 in effect at the time of the successive motion.  As this Court has stated, "Rule 61 is intended to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[23]  The Superior Court did not err in applying the version of Rule 61 in effect at the time Washington filed his second motion for postconviction relief.

---

[21] *See, e.g., Turnage v. State*, 2015 WL 6746644, at *2 (Del. Nov. 4, 2015) (applying amended Rule 61 to postconviction motion filed almost a year after Rule 61 was amended); *Cannon v. State*, 127 A.3d 1164, 1167 (Del. 2015) (applying amended Rule 61 to a motion filed six months after Rule 61 was amended); *State v. Taylor*, 2018 WL 3199537, at *3 (Del. Super. Ct. June 28, 2018) (recognizing that the amended version of Rule 61 "was firmly established" by the time the defendant filed his amended second motion in 2017), *aff'd*, 2019 WL 990718 (Del. Feb. 27, 2019).
[22] *Turnage*, 2015 WL 6746644, at *2. *See also In re West*, 2019 WL 4052483, at *1 (Del. Aug. 27, 2019) (relying on *Turnage* to reject the petitioner's argument that amended Rule 61 placed unconstitutional limits on his right to court access and violates due process); *Taylor*, 2018 WL 3199537, at *6 ("As in *Turnage*, amended Rule 61 affords Taylor more due process than the United States Constitution requires and accordingly does not act as a suspension of Taylor's habeas corpus rights.").
[23] *Ploof*, 75 A.3d at 820.

8

(13)   Washington next contends that the United States Supreme Court's decision in *Martinez* excuses any procedural default of his ineffective assistance claims under Rule 61.  He is mistaken.  In *Martinez,* the United States Supreme Court held that a lack of counsel or inadequate counsel during initial postconviction proceedings may establish cause for a defendant's procedural default of a claim of ineffective assistance of counsel at trial in a proceeding for federal habeas corpus relief.[24]  *Martinez* thus provides a narrow exception to procedural bars in federal habeas actions, but "does not stand for the proposition that a substantial claim of ineffective assistance of postconviction counsel overcomes a procedural bar to successive state-court postconviction proceedings."[25]   Washington's claims of ineffective assistance by postconviction counsel do not relieve him of the burden of satisfying the requirements of Rule 61(d)(2) to avoid summary dismissal of his second motion for postconviction relief.[26]

(14)   Relying on this Court's decision in *Burroughs*, Washington argues that the Superior Court should have applied the version of Rule 61 in effect before June

---

[24] 373 U.S. at 17.

[25] *Rasin v. State*, 2019 WL 1410748, at *1 (Del. Mar. 27, 2019).  *See also Steedley v. State*, 2014 WL 4113114, at *2 (Del. Aug. 20, 2014) ("The *Martinez* decision, which permits a federal court to review a 'substantial' ineffective assistance of counsel claim on federal habeas review, has no apparent application in this case."(citation omitted)).

[26] *Rasin*, 2019 WL 1410748, at *1.  *See also Durham v. State*, 2017 WL 5450746, at *2 (Del. Nov. 13, 2017) (holding that even if the defendant had no prior opportunity to raise his claims of ineffective assistance of postconviction counsel, he was still required to satisfy Rule 61(d)(2) to avoid the summary dismissal of his second postconviction motion).

4, 2014.  Washington's reliance on *Burroughs* is misplaced.  The defendant in *Burroughs* filed his first motion for postconviction relief, with the assistance of counsel, in 2011.[27]  After the Superior Court denied the motion in October 2013, Burroughs filed a *pro se* appeal in February 2014.[28]  In response to the notice directing him to show cause why his untimely appeal should not be dismissed, Burroughs stated that postconviction counsel did not tell him where to file his appeal.[29]  Postconviction counsel admitted that he was ineffective by not filing a notice of appeal or ascertaining whether Burroughs wished to appeal.[30]

(15)   This Court held that it lacked jurisdiction to hear the untimely appeal, but ruled that "[b]ecause the ineffective assistance of Burroughs' postconviction counsel deprived Burroughs of the opportunity to file an appeal from the denial of his first motion for postconviction relief under Rule 61, the Court will remand this matter to the Superior Court for the appointment of counsel to represent Burroughs in filing a second motion for postconviction relief under Rule 61."[31]  Shortly after remand, Rule 61 was amended as discussed above.  The parties stipulated that the

---

[27] *Burroughs*, 2014 WL 1515102, at *1.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*

version of Rule 61 in effect at the time of remand, before the June 2014 amendments, should apply to Burroughs' second motion for postconviction relief.[32]

(16) The unique circumstances of *Burroughs* are not present here. Unlike in *Burroughs* where postconviction counsel failed to file a timely appeal, Washington's postconviction counsel filed a timely appeal from the Superior Court's denial of his first motion for postconviction relief so he was not deprived of appellate review. In addition, the second motion for postconviction relief in *Burroughs* was filed less than a year after the June 2014 amendments to Rule 61, while Washington filed his second motion for postconviction relief more than eight years after those amendments. The parties also did not agree to application of the pre-June 2014 version of Rule 61 to Washington's second postconviction motion as the parties did in *Burroughs*. In light of these differences, the Superior Court did not err in declining to follow *Burroughs*.

(17) Assuming the amended version of Rule 61 applies to his second postconviction motion, Washington argues that the Superior Court erred in finding that he failed to overcome the Rule 61 procedural bars by pleading with particularity new evidence creating a strong inference that he is actually innocent. He does not

---

[32] *State v. Burroughs*, 2016 WL 143694, at *2-3 (Del. Super. Ct. Apr. 4, 2016) (applying the pre-amendment version of Rule 61, finding that none of the procedural bars applied to the defendant's claims that his postconviction counsel was ineffective, and concluding that those claims were without merit), *aff'd*, *Burroughs v. State*, 2016 WL 6311116 (Del. Oct. 27, 2016).

11

challenge the Superior Court's findings that his claims were filed more than a year after his convictions as barred by Rule 61(i)(1), the motion was successive as barred by Rule 61(i)(2), some of his claims were not raised in the proceedings leading to his conviction and were therefore barred by Rule 61(i)(3), and some of his claims were previously adjudicated as barred by 61(i)(4).

(18) To satisfy the actual innocence exception, Washington must "show that his new evidence (1) is such as will probably change the result if a new trial is granted; (2) has been discovered since the trial and could not have been discovered before by the exercise of due diligence; and (3) is not merely cumulative or impeaching."[33] "Innocence of the 'acts underlying the charges' requires 'more than innocence of intent; it requires new evidence that a person other than the petitioner committed the crime.'"[34] As discussed below, the evidence identified by Washington—Stanley's affidavit, Coverdale's recantation of his trial testimony, Janard Brown's affidavit, Gary Clark's affidavit, and Kennesha Land's statement to an investigator—does not satisfy the actual innocence exception.

(19) Stanley was a reluctant witness at trial. He invoked his Fifth Amendment right against self-incrimination upon being asked his name, but after speaking with his attorney and acknowledging that he pleaded guilty and agreed to

---

[33] *Purnell*, 254 A.3d at 1100.
[34] *Id.* at 1095 (quoting *Taylor*, 2018 WL 3199537, at *7).

12

testify at Washington's trial, he testified that he had voluntarily spoken (and lied) to Detective Legenstein.[35] The State entered into evidence and played for the jury the statement Stanley made to Detective Legenstein on January 29, 2011 under 11 *Del. C.* § 3507.[36]

(20) During the interview, Stanley initially denied involvement in the shooting, but later admitted that surveillance video showed him firing a gun in the bowling alley.[37] He said the shooting arose from a dispute between different neighborhood groups, and that he could not say who shot him because that would violate the code of the streets.[38] Stanley eventually proposed that he call his mother to tell her what happened, including who shot him, and then she could relay that to the detective.[39] Detective Legenstein left the room while Stanley spoke to his mother, but left the recording equipment on.[40] Stanley told his mother that his group got into an argument with another group of people, specifically Brown and Littles.[41] He said Littles shot at him first, and told his mother several times that Littles was Washington.[42] Detective Legenstein then returned to the room and told Stanley that

---

[35] Ans. Br. App. at B86-87.
[36] *Id.* at B88.
[37] *Id.* at B23 1:03-1:08.
[38] *Id.* :30:00-:37:00, 1:06-1:07, 1:32.
[39] *Id.* 1:10-1:11.
[40] *Id.* 1:15-1:16.
[41] *Id.* 1:16-1:17.
[42] *Id.* 1:17-1:18, 1:20-21.

13

he would speak with his mother.[43]  He further interviewed Stanley, who said Washington shot him and picked Washington as his shooter from a photo array.[44]

(21)   After Stanley's Section 3507 statement was played for the jury, Stanley claimed that he had lied to his mother and denied that Washington shot him.[45]  The State then played a February 5, 2011 call Stanley made from prison in which he stated that he was mad the police had arrested Littles because he wanted to get rid of Littles himself.[46]  Stanley admitted what he said, and testified that the code of the streets required people not to cooperate with police.[47]  In his November 2022 affidavit, Stanley stated that he was under the influence of morphine at the time of his January 29, 2011 police interview, the police repeatedly denied his requests for medical treatment, and he never picked Washington out of a photo array or told police that Washington shot him.[48]

(22)   As the Commissioner found, Stanley's affidavit was simply not credible.[49]  The recording of the police interview, contrary to Stanley's affidavit, reflects that he was lucid throughout and offered the opportunity to return to the hospital, which he declined.[50]  The recording also refutes Stanley's statement that he

---

[43] *Id.* 1:26-1:28.
[44] *Id.* 1:29-1:31, 1:38-1:44, 1:53-1:55.
[45] Ans. Br. App. at B90-91.
[46] *Id.* at B94-95.
[47] *Id.* at 95, 98-99.
[48] *Id.* at B302.
[49] *Washington*, 2023 WL 5406164, at *7.
[50] Ans. Br. App. at B23 33:47-34:11.

never told police Washington shot him or picked Washington out of a photo array.[51]

Washington fails to address the discrepancies between the affidavit and the recording.

(23) Even assuming the affidavit did constitute new evidence,[52] it did not create a strong inference of Washington's actual innocence. The jury previously had the opportunity to evaluate Stanley's claim that he lied to his mother and police about who shot him and implicitly rejected this claim in finding Washington guilty. Washinton cannot show that Stanley's affidavit would probably change the result if a new trial were granted. In addition, the affidavit did not present any evidence that someone other than Washington shot Stanley.

(24) We next consider Coverdale's recantations of his trial testimony. At trial, Coverdale testified that he, Washington, someone named Gary, and Brown met at the bowling alley on the night of the shooting.[53] Coverdale and Gary stayed outside in the parking lot, while Washington and Brown entered the bowling alley.[54] After the shooting, Washinton fled with Coverdale and others and said he thought he shot somebody.[55] Coverdale testified that he saw Washington with a gun after

---

[51] *Id.* at 1:53-1:56.
[52] The Commissioner found that the affidavit was not new because Stanley's counsel received a copy of his recorded interview before trial, Stanley testified at trial, and the affidavit was simply a revised version of statement to police and trial testimony. *Washington*, 2023 WL 5406164, at *8.
[53] Ans. Br. App. at B72.
[54] *Id.* at 73.
[55] *Id.*

the shooting, and that the shooting arose from an ongoing dispute between Washington and Stanley.[56]  Coverdale also described the threats he was receiving in prison and how Washington made a shooting gesture at him the morning of his testimony.[57]

(25)   In an affidavit filed in the Superior Court in January 2013, Coverdale recanted his trial testimony, claiming that he was never at the bowling alley and had lied for his own personal reasons.[58]  And in a 2020 interview with an investigator, Coverdale said that he wasn't at the bowling alley at the time of  theshooting, that he had no recollection of where he was that day, and that he had testified falsely because he thought it might help him with some pending charges, even though the police and prosecutors never discussed that with him.[59]

(26)   As the Commissioner recognized, courts view recantation evidence with suspicion.[60]  Even assuming the recantations did constitute new evidence,[61]

---

[56] *Id.*

[57] *Id.* at B74.

[58] Ans. Br. App at B101.

[59] Op. Br. App. at Ex. 20-29.

[60] *Washington*, 2023 WL 5406164, at *5.  *See also Blankenship v. State,* 447 A.2d 428, 433 (Del. 1982) ("A Motion for a New Trial based upon a witness' recantation is generally viewed with suspicion, and a denial of such a motion will not be reversed on appeal unless there has been an abuse of discretion by the Trial Court.").

[61] The Commissioner questioned whether Coverdale's recantations were new evidence as the affidavit was created more than a year after he testified at trial (and described threats he was receiving) and the interview occurred more than nine years after he testified.  *Washington*, 2023 WL 5406164, at *8.  *See also State v. Clay*, 2018 WL 6434798, at *6 (Del. Super. Ct. Dec. 7, 2018) (finding post-trial affidavit of c-defendant was not newly discovered evidence because it did not exist until after trial and contained allegations not made until after trial), *aff'd*, 2019 WL 2486206 (Del. June 13, 2019).  The Commissioner also noted that both the affidavit and the

they did not provide any evidence that someone other than Washington committed the acts underlying the charges of which he was convicted. Coverdale claimed he wasn't at the bowling alley on the night of the shooting and had no factual information about what happened; he did not say Washington was innocent or identify someone else as committing the shooting at the bowling alley.

(27) In an affidavit dated November 9, 2014, Gary Clark stated that he wasn't at the bowling alley or with Coverdale or Washington on January 26, 2011 (two days before the shooting).[62] As found by the Commissioner, this affidavit was not new and did not exculpate Washington.[63]

(28) In his 2022 affidavit, Brown stated that Kennesha Land drove him, Washington, and another person to the bowling alley in late January 2011.[64] Shortly after they went into the bowling alley, the shooting occurred, and he and Washington ran out the front entrance.[65] They met Land at the car and Land drove them away.[66] As people exited the parking lot, police spoke to them and took their information.[67] Clark said Coverdale was never with them.[68] Even assuming the affidavit constituted

---

interview were revised versions of Coverdale's statement to police in February 2011 and trial testimony in October 2011. *Washington*, 2023 WL 5406164, at *8.

[62] Ans. Br. App. at B176.
[63] *Washington*, 2023 WL 5406164, at *9.
[64] Ans. Br. App. at B193.
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.*

new evidence,[69] the Commissioner did in not err in finding that it failed to create a strong inference of Washington's actual innocence. At most, Brown's affidavit was impeaching of Coverdale's testimony. Brown did not identify any other person who fired a gun in the bowling alley, and he did not exculpate Washington by stating that he did not fire a gun in the bowling alley. In fact, Brown placed Washington squarely at the scene of the crime.

(29)    In her 2021 statement, Land told an investigator that she drove herself, Washington, Brown, and her cousin to the bowling alley on January 28, 2011.[70] While Land parked the car, Brown and Washington went into the bowling alley.[71] By the time Land got into the bowling alley or shortly after she arrived, the shooting occurred.[72] Land and her cousin ran out to the car where Brown and Washington later joined them.[73] As people exited the parking lot, police spoke to them and took their information.[74] Even assuming the statement did constitute new evidence,[75] the Commissioner did not err in finding that it did not create a strong inference of

---

[69] The Commissioner found that the affidavit was not new evidence because of evidence presented at trial establishing that Brown was with Washington at the bowling alley when the shooting occurred and the affidavit reflected information Brown possessed before the trial. *Washington*, 2023 WL 5406164, at *9 .

[70] Op. Br. at Ex. 33.

[71] *Id.* at Ex. 35-36

[72] *Id.* at Ex. 36.

[73] *Id.*

[74] *Id.* at Ex. 37.

[75] The Commissioner found that the affidavit was not new evidence because she was a potential witness known to Washington before trial. *Washington*, 2023 WL 5406164, at *10.

Washington's actual innocence. Like Brown's affidavit, the statement was at most impeaching of Coverdale's testimony. Also like Brown, Land placed Washington at the scene of the crime and did not identify someone else as committing the shooting.

(30) Finally, Washington argues that the Superior Court erred in denying his motions to compel and request for an evidentiary hearing. The Superior Court did not address Washington's motions to compel, but denied his request for an evidentiary hearing as moot.[76] Washington moved to compel the production of police reports and surveillance video that he speculated would contradict aspects of Coverdale's testimony. He also moved to compel the production of materials previously produced to his counsel that he believed would corroborate the affidavits and statements he submitted to support his claim of innocence.

(31) The Superior Court possesses "inherent authority under Rule 61 in the exercise of its discretion to grant particularized discovery for good cause shown."[77] The good cause burden "is a heavier burden than the showing needed for pretrial discovery" because "at the postconviction stage, 'petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some

---

[76] *Washington*, 2023 WL 540614, at *10.
[77] *Dawson v. State*, 673 A.2d 1186, 1197 (Del. 1996).

damaging evidence.'"[78]  Washington's speculation and conclusory allegations did not establish good cause for discovery.  As to Washington's request for an evidentiary hearing, he has not shown that the Superior Court abused its broad discretion in denying his request.[79]

NOW, THEREFORE, IT IS ORDERED that the Superior Court's judgment be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[78] *Cabrera v. State*, 173 A.3d 1012, 1033 (Del. 2017) (quoting *State v. Jackson*, 2006 WL 1229684, at *2 (Del. Super. Ct. May 3, 2006)).

[79] Del. Super. Ct. Crim. R. 61(h)(1) ("After considering the motion for postconviction relief, the state's response, the movant's reply, if any, the record of prior proceedings in the case, and any additional materials, the judge shall determine whether an evidentiary hearing is desirable.").  *See also Owens v. State*, 301 A.3d 580, 590 (Del. 2023) ("We have interpreted this rule [Rule 61(h)(1)] as granting the Superior Court broad discretion to determine the need for an evidentiary hearing.").